## STATE OF CONNECTICUT *v.* NOEL BERMUDEZ
### (AC 22949)

Lavery, C. J., and Schaller and West, Js.

Argued May 6—officially released September 2, 2003

*Ralph C. Crozier*, with whom, on the brief, was *Michael P. Gannon*, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Terence D. Mariani*, assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Noel Bermudez, appeals from the judgment of conviction, rendered after a jury trial, of three counts of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3)[1] and one count of assault in the third degree in violation

---

[1] General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

of General Statutes § 53a-61.[2] On appeal, the defendant claims that (1) the evidence was insufficient to sustain his conviction, (2) the prosecutor engaged in misconduct that violated the defendant's right to a fair trial, (3) the court improperly excluded evidence of a witness' prior inconsistent statements, (4) the court improperly admitted into evidence the defendant's hospital records and (5) the court violated the defendant's right to a fair trial by overemphasizing the jury instructions on manslaughter in the first degree. Because we conclude that the prosecutor engaged in misconduct that violated the defendant's right to a fair trial, we reverse the judgment of the trial court and order a new trial.[3]

The jury reasonably could have found the following facts. At approximately 4 a.m., on June 23, 2000, a Chevrolet Tracker was stopped at a red traffic signal on Chase Avenue in Waterbury. The vehicle the defendant was driving approached the traffic light traveling in the

---

[2] General Statutes § 53a-61 (a) provides in relevant part: "A person is guilty of assault in the third degree when . . . (2) he recklessly causes serious physical injury to another person . . . ."

[3] We note that the defendant's second claim is dispositive and, thus, we need not address his third and fourth claims, as we cannot say that they are likely to arise on retrial. The first claim regarding the sufficiency of the evidence nevertheless is addressed because a determination of evidentiary insufficiency would entitle the defendant to a judgment of acquittal.

We also hold with respect to the defendant's fifth claim that the trial court's instructions to the jury on manslaughter in the first degree were proper. In a criminal trial, the judge is more than a mere moderator of the proceedings. It is his responsibility to have the trial conducted in a manner that approaches an "atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding." *Glasser* v. *United States*, 315 U.S. 60, 82, 62 S. Ct. 457, 86 L. Ed. 680 (1942).

The court read to the jury the charge of manslaughter in the first degree on six separate occasions, but only once referenced the lesser included offenses. The court also did not read or provide copies of a lesser included offense when requested to do so by the jury. The appearance of partiality at such a crucial time in the proceeding in the presence of the jury is extremely prejudicial to the defendant's case. Accordingly, the court violated the defendant's right to a fair trial by overemphasizing the instructions on manslaughter in the first degree.

same direction as the Tracker. It struck the rear end of the Tracker at a speed of more than ninety miles per hour. The occupants of the Tracker, Stacy Maia and Nicolina Baratta, both died as a result of the collision. Cecilio Quinones, a passenger in the front seat of the defendant's vehicle, sustained fatal injuries as a result of the collision. Samuel Tirado, a second passenger in the defendant's vehicle sustained serious but nonfatal injuries as a result of the collision. It was later determined that the defendant was under the influence of marijuana and phencyclidine, also known as PCP, at the time of the collision.

Immediately following the collision, the defendant climbed out of the windshield of his vehicle as the driver's door would not open. The defendant pulled Quinones from the front seat of the vehicle. The defendant then collapsed next to Quinones on the street.

The defendant was arrested on an information dated October 2, 2000. The defendant was charged with three counts of manslaughter in the first degree in violation of § 53a-55 (a) (3) and one count of assault in the first degree in violation of General Statutes § 53a-59 (a) (3).[4] A jury trial began on January 10, 2002. After the state rested, the defendant sought to have all of the charges dismissed and to obtain a judgment of acquittal as to all four counts. The court denied the defendant's motion for a judgment of acquittal. The defendant was convicted of three counts of manslaughter in the first degree and one count of the lesser included offense of assault in the third degree. This appealed followed. Additional facts will be set forth as necessary.

---

[4] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person . . . ."

## I

The defendant's first claim is that the evidence was insufficient to sustain his conviction. Specifically, the defendant argues that there was insufficient evidence for the jury to find that he was driving the vehicle that collided with the Chevrolet Tracker at the red traffic signal. We disagree.

The following additional facts are relevant to the defendant's claim. At trial, the state called two eyewitnesses to the collision. The first witness, Elliston Skyers, testified that he observed the collision from his place of employment. He proceeded to the accident scene and pulled Tirado from the backseat of the defendant's vehicle. Skyers further testified that he witnessed the defendant attempting to pull Quinones from the front passenger seat of the vehicle.

The state called Thomas Meier, a member of the Waterbury fire department, as the second witness. Meier was working during the night of the collision at the North Side firehouse located near the scene of the collision. Meier testified that he was awakened by the sound of the collision. Meier viewed both damaged vehicles from the window of a second floor bedroom in the firehouse. He then proceeded to the accident site. Meier testified that he observed the defendant climb out of the vehicle through the windshield.

Lucinda Lopes, a crime lab supervisor for the Waterbury police department, testified for the state that the front driver's door of the defendant's vehicle would not open. Lopes testified that the defendant would have been forced to climb through the broken front windshield because the driver's door would not open.

The state also called as a witness Christina Ampier, the defendant's live-in girlfriend. Ampier was the owner of the vehicle involved in the collision. Ampier testified

that the defendant had his own set of keys to the vehicle and had permission to drive it on the night in question.

DNA analysis also was conducted by the department of public safety. Nicholas Young, from that department, testified that the DNA tests eliminated Tirado and Quinones as the source of the blood on the driver's door. He testified that the blood samples on the armrest and driver's door handle were that of the defendant. Last, Thomas F. Gilchrist, an associate medical examiner from the office of the chief medical examiner, testified for the state. Gilchrist testified that the defendant's injuries were consistent with the type of injuries sustained by a driver in a head-on collision.

The defense called Evelyn Maldonado and Zulema Arroya as witnesses. Both witnesses were social acquaintances of the defendant. Both testified that they were in the defendant's vehicle earlier on the night of the collision. Maldonado and Arroya testified that the defendant was not the driver of the vehicle during the time that they were passengers. Furthermore, Tirado, the only surviving victim of the collision other than the defendant, was called by the state as a witness. Tirado testified that the defendant was not the driver of the vehicle at the time he fell asleep in the backseat of the car shortly before the collision.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quota-

tion marks omitted.) *State* v. *Montgomery*, 254 Conn. 694, 732, 759 A.2d 995 (2000).

"As we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [trier of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Barnett*, 53 Conn. App. 581, 586–87, 734 A.2d 991, cert. denied, 250 Conn. 918, 738 A.2d 659 (1999).

The jury is the arbiter of fact, and "[c]redibilty is within the sole province of the fact finder." *State* v. *Rogelstad*, 73 Conn. App. 17, 25–26, 806 A.2d 1089 (2002). It is axiomatic that the jury, in its role as fact finder, may choose to believe all, some or none of a witness' testimony. *State* v. *Fullard*, 5 Conn. App. 338, 342, 497 A.2d 1041 (1985). "In assessing the credibility of a witness, jurors are permitted to rely on their everyday experience. Common sense does not take flight at the courthouse door." *State* v. *Rivera*, 74 Conn. App. 129, 138, 810 A.2d 824 (2002).

The jury reasonably could have determined that the defendant was the driver of the vehicle because it was owned by his live-in girlfriend, DNA evidence linked his blood to that on the driver's door, he sustained injuries consistent with that of a driver in a head-on collision and he exited through the windshield, consistent with damage to the driver's door. Regarding the testimony about when the defendant was or was not driving the vehicle, the jury could have concluded that

he had decided to drive later, as the night went on, or the jury could have decided not to credit the testimony of the defense witnesses.[5]

Accordingly, construing the evidence in the light most favorable to sustaining the verdict, we conclude that the jury reasonably could have concluded that the cumulative force of the evidence established that the defendant was the driver of the vehicle when it collided with the Tracker at the red traffic signal. We therefore conclude that the state presented sufficient evidence to support the defendant's conviction.

## II

The defendant's second claim is that the prosecutor engaged in misconduct that violated the defendant's right to a fair trial. The defendant contends that prosecutorial misconduct occurred during closing argument. Specifically, the defendant argues that the prosecutor improperly expressed his opinions regarding the credibility of witnesses and the ultimate issue of guilt. We agree.

The defendant failed to preserve his claim and now seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[6] the plain error doctrine and this court's supervisory powers.[7]

[5] It should be noted that the witnesses who testified that the defendant was not driving the vehicle at earlier times during the night all had a connection or relation to the defendant.

[6] Pursuant to *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

[7] We note that the defendant also argues that the prosecutor committed misconduct by failing to disclose in a timely manner six audiotapes of radio transmissions and 911 calls between the fire department, police department, dispatchers and ambulances. That argument has been preserved for review.

We review the defendant's unpreserved claim under *Golding* because the record is adequate for review, and his claim of prosecutorial misconduct in violation of his right to a fair trial is of constitutional magnitude. See *State* v. *Reynolds*, 264 Conn. 1, 160 n.142, 836 A.2d 224 (2003). We conclude that the alleged constitutional violation clearly existed and deprived the defendant of his right to a fair trial, and that the state has failed to demonstrate the harmlessness of the alleged constitutional violation beyond a reasonable doubt.

The following additional facts are necessary for our resolution of the defendant's claim. During the prosecutor's closing arguments, he stated his opinion that a defense witness, Demaris Garcia, had perjured herself. Specifically, the prosecutor stated: "I'm sure it's hard to accept, but people do come in here, they raise their right hand and swear to tell the truth and they lie. And that's what the evidence in this case shows about Demaris Garcia. That's what I told her, as [defense counsel] brought out, when I heard her story in my office. I said to her, 'If you get up there and you tell something that is not true and we can prove it, you are going to be arrested for perjury.' "

The prosecutor made the following additional remarks concerning the credibility of witnesses. One of the witnesses about whom the prosecutor commented was the state's first witness, who had observed the accident. The prosecutor stated: "Skyers is a neutral witness. He doesn't know the defendant for ten years. . . . Why would he make that up? How would he forget

Accordingly, the defendant's claims must be bifurcated because only one of them was preserved properly by objection at trial. See *State* v. *Lasky*, 43 Conn. App. 619, 625–26, 685 A.2d 336 (1996), cert. denied, 239 Conn. 959, 688 A.2d 328 (1997). We address the unpreserved argument, which is that the prosecutor improperly expressed his opinions during closing remarks, under *Golding*. Because we reverse the judgment on the first part of the claim, we need not reach the preserved claim of prosecutorial misconduct.

that? How could that be anything but the truth? I mean, examine the credibility of witnesses. What would possess somebody to make that up?" The prosecutor went on to argue: "I know one thing for sure. . . . If Garcia is telling the truth, then Skyers made up the fact [that] he pulled somebody out of the car. . . . I know one thing. Her testimony does not jibe with anybody else['s] in this case. And that, to me, and I can submit to you, indicates she is not telling the truth."

In discussing the recklessness of the driver, the prosecutor stated that the defendant was responsible and that he had killed three people. Defense counsel, in closing argument, suggested that the prosecutor had a hidden agenda in preferring to prosecute the defendant because he survived the collision. Defense counsel stated: "You want to prosecute a live person instead of pinning it on a dead person." The prosecutor responded in rebuttal argument that he had no hidden agenda and that "[t]he driver in that accident deserved to die. That would have been justice. If I had my way, that's how this case would have played out, not the innocent people dying." He went on to argue that the evidence for conviction was as strong or stronger than that in many of the cases he successfully prosecuted in the past.

Before the attorneys made their closing remarks and in the court's final charge to the jury, the court advised the jury as to how to consider the evidence and the arguments of counsel. The court instructed the jury in relevant part: "You keep in mind. These arguments by the attorneys. They're not witnesses in the case. They are not sworn, and they each have a point of view which they are going to try and explain to you. . . . If your recollection of the evidence is different than theirs, your recollection controls." At the close of the arguments, the court instructed the jurors that they were the sole arbiters of the facts: "It is your duty to find the facts. You are to recollect and weigh the evidence,

and form your own conclusions as to what the ultimate facts are." The court stated that "[c]ertain things are not evidence. And you may not consider them in deciding what the facts are. And these include, and I have a list for you, things that are not evidence. The arguments and the statements by the attorneys."

Our case law states that "[w]e will not afford *Golding* review to [an unpreserved claim] of prosecutorial misconduct where the record does not disclose a pattern of misconduct pervasive throughout the trial or conduct that was so blatantly egregious that it infringed on the defendant's right to a fair trial. . . . [I]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of the argument." (Internal quotation marks omitted.) *State* v. *Bonsu*, 54 Conn. App. 229, 238, 734 A.2d 596, cert. denied, 251 Conn. 909, 739 A.2d 1249 (1999).

Prosecutorial misconduct may occur during closing argument. *State* v. *Atkinson*, 235 Conn. 748, 768–69, 670 A.2d 276 (1996). "[T]o determine whether claims of prosecutorial misconduct amounted to a denial of due process, we must decide whether the challenged remarks were improper, and, if so, whether they caused substantial prejudice to the defendant. . . . In conducting our analysis, we focus on several factors: (1) the extent to which the misconduct was invited by defense conduct or argument; (2) the severity of the conduct; (3) the frequency of the conduct; (4) the centrality of the misconduct to the critical issues of the case; (5) the strength of the curative instructions adopted; and (6) the strength of the state's case." (Citation omitted; internal quotation marks omitted.) *State* v. *Garrett*, 42 Conn. App. 507, 515–16, 681 A.2d 362, cert. denied, 239 Conn. 928, 929, 683 A.2d 398 (1996).

The defendant's claim of prosecutorial misconduct centers on whether the prosecutor during closing argument improperly expressed his personal opinion as to the defendant's conduct, the credibility of various witnesses and on the ultimate issue of guilt. "[I]t is well established that the evaluation of [witnesses'] testimony and credibility are wholly within the province of the trier of fact." (Internal quotation marks omitted.) *State* v. *Stevenson*, 70 Conn. App. 29, 39, 797 A.2d 1, cert. granted on other grounds, 261 Conn. 918, 806 A.2d 1057 (2002).

"The prosecutor may not express his own opinion, either directly or indirectly, as to the credibility of witnesses. . . . Such expressions of personal opinion are a form of unsworn and unchecked testimony. . . . These expressions of opinion are particularly difficult for the jury to ignore because of the special position held by the prosecutor. . . . The jury is aware that he has prepared and presented the case and consequently, may have access to matters not in evidence . . . which the jury may infer to have precipitated the personal opinions. . . . While the prosecutor is permitted to comment upon the evidence presented at trial and to argue the inferences that the jurors might draw therefrom, he is not permitted to vouch personally for the truth or veracity of the state's witnesses." (Citation omitted; internal quotation marks omitted.) *State* v. *Payne*, 260 Conn. 446, 454, 797 A.2d 1088 (2002).

In this case, the prosecutorial misconduct was not invited by defense conduct or argument. It is imperative that we "must review the challenged comments in the context of the entire trial, with due regard to the extent to which the objectionable marks were invited by defense conduct or argument." (Internal quotation marks omitted.) *State* v. *Briley*, 55 Conn. App. 258, 262, 739 A.2d 293, cert. denied, 251 Conn. 927, 742 A.2d 363 (1999). Defense counsel's remarks concerning possible

hidden agendas of the prosecutor and witnesses, and other attacks on the witnesses' credibility did not warrant the prosecutor's expressing his opinion on any witness or on the merits of the case. The state is entitled to rebut an attack on the credibility of a witness and present a countervailing argument to the jury, but that does not permit the prosecutor to express his personal beliefs.

The prosecutor's misconduct was of a severe nature and central to the critical issues in the case. His remarks during closing argument suggesting that a defense witness might be charged with perjury clearly were improper. Garcia was a key defense witness who had observed the defendant stepping out of the rear passenger side of the automobile. That contradicted the state's version of the facts, which was that the defendant was trapped in the driver's seat and was forced to come out through the windshield. The jury easily could have inferred from the prosecutor's remarks that he had information outside of the evidence that the witness was indeed lying. Those statements constituted an inappropriate attack on the witness' credibility because they implied that the prosecutor had knowledge outside the record about the witness' credibility. See *State* v. *Payne*, supra, 260 Conn. 454. The prosecutor during his closing remarks repeatedly expressed his personal opinion concerning the credibility and neutrality of the state's first two witnesses.

The prosecutorial misconduct went to the heart of the case. The critical issue was the identity of the driver. The state's first two witnesses were at the accident scene immediately after the collision. The prosecutor vouched for their testimony as being more reliable than defense witnesses' testimony. Such remarks are an improper way to highlight the evidence presented or to suggest a reasonable conclusion that could be drawn by the jury. See *State* v. *Butler*, 55 Conn. App. 502,

515–16, 739 A.2d 732 (1999), aff'd, 255 Conn. 828, 769 A.2d 697 (2001).

The prosecutor also improperly gave his personal opinion on the ultimate issue of the defendant's guilt during closing argument. A prosecutor should not express his opinion, directly or indirectly, as to the guilt of the defendant. *State* v. *Hampton*, 66 Conn. App. 357, 371, 784 A.2d 444, cert. denied, 259 Conn. 901, 789 A.2d 992 (2001). The prosecutor buttressed his opinion of guilt by comparing this case to other cases that he had successfully prosecuted in the past. Furthermore, he went on to state that justice would have been served by the death of the defendant in the collision as opposed to the deaths of the victims. That clearly was an improper appeal to the jury's emotions and another example of the prosecutor's improperly expressing his personal opinion.

The cumulative effect of the prosecutor's improper remarks during closing argument so infected the proceedings as to deprive the defendant of his right to a fair trial. We reach that conclusion because the misconduct did not consist of a single, isolated remark, but recurred throughout the entire closing argument and involved the critical issue in the case.

The state argues that it has demonstrated the harmlessness of the alleged constitutional violations to satisfy the fourth prong of *Golding*. It argues that even if the prosecutor's conduct were improper, the court remedied any impropriety by giving the jury a curative instruction to disregard the comments. The court's instructions to the jury were insufficient to cure the accumulated harm created by the course of prosecutorial misconduct. See *State* v. *Stevenson*, supra, 70 Conn. App. 45. Because of the severity and the centrality of the misconduct, this is not a situation in which we can rely on the presumption that the jury will follow

the court's instruction and disregard the prosecutor's statements. Furthermore, we must consider whether the court's appearance of partiality may have lessened the impact that any such charge would have on the jury.

This is not a case in which the state's evidence was so strong that we can say that the misconduct constituted harmless error. The critical issue was the identity of the driver. Although much of the circumstantial evidence pointed toward the defendant, he did present numerous witnesses to contradict the state's case. The credibility of the state's witnesses and the defense witnesses was crucial because none of the witnesses actually observed the defendant as the driver at the time of the accident. The prosecutor's pervasive misconduct was directed at the witnesses' credibility and the ultimate issue of guilt, and we cannot dismiss as inconsequential its cumulative effect on the jury.

Accordingly, we conclude that the alleged constitutional violation clearly existed and that its cumulative effect deprived the defendant of his right to a fair trial. Because the state has failed to demonstrate the harmlessness of the alleged constitutional violation beyond a reasonable doubt, a new trial is required.[8]

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

---

[8] In *State* v. *Stevenson*, supra, 70 Conn. App. 32–33, we concluded that when all four prongs of *Golding* are satisfied and a new trial is required, there is no need to conduct plain error review or to invoke our supervisory powers to reverse the defendant's conviction. Because we find that the defendant's claim satisfies all four prongs of *Golding*, we do not engage in the other requested modes of review.