## STATE OF CONNECTICUT *v.* ANDRE S. FAIRLEY
### (AC 24028)

Flynn, DiPentima and Hennessy, Js.

Argued September 20—officially released November 9, 2004

*Sebastian O. DeSantis*, special public defender, for the appellant (defendant).

*Michael E. Criscuolo*, special deputy assistant state's attorney, with whom were *Kevin T. Kane*, state's attorney, and, on the brief, *Stephen M. Carney*, assistant state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Andre S. Fairley, appeals from the judgment of conviction, rendered after a jury trial, of two counts of arson in the second degree in violation of General Statutes § 53a-112 (a) (1) (A),[1] one count of arson in the third degree in violation of General Statutes § 53a-113 (a),[2] one count of criminal mischief in the first degree in violation of General Statutes § 53a-115 (a) (1)[3] and two counts of criminal mischief in the third degree in violation of General Statutes § 53a-117 (a) (1) (A).[4] On appeal, the defendant claims that there was insufficient evidence adduced at trial to prove beyond a reasonable doubt that he aided in the commission of the crimes.[5] We conclude that there was sufficient evidence and, accordingly, affirm the judgment of the trial court.

On the basis of the evidence presented at trial and the reasonable inferences drawn therefrom, the jury reasonably could have found the following facts. On

[1] General Statutes § 53a-112 (a) provides in relevant part: "A person is guilty of arson in the second degree when, with intent to destroy or damage a building, as defined in section 53a-100, (1) he starts a fire or causes an explosion and (A) such act subjects another person to a substantial risk of bodily injury . . . ."

[2] General Statutes § 53a-113 (a) provides: "A person is guilty of arson in the third degree when he recklessly causes destruction or damage to a building, as defined in section 53a-100, of his own or of another by intentionally starting a fire or causing an explosion."

[3] General Statutes § 53a-115 (a) provides in relevant part: "A person is guilty of criminal mischief in the first degree when: (1) With intent to cause damage to tangible property of another and having no reasonable ground to believe that such person has a right to do so, such person damages tangible property of another in an amount exceeding one thousand five hundred dollars . . . ."

[4] General Statutes § 53a-117 (a) provides in relevant part: "A person is guilty of criminal mischief in the third degree when, having no reasonable ground to believe that he has a right to do so, he: (1) Intentionally or recklessly (A) damages tangible property of another . . . ."

[5] The defendant was convicted on the aforementioned charges on the basis of General Statutes § 53a-8, Connecticut's accessorial liability statute.

November 17, 2000, the defendant drove Michael DePasquale and Corey Ferguson to Crown Billiards in Groton to meet a group of nine friends. After an altercation at the pool hall, the group split up and drove away in three cars. One of the individuals in the car carrying DePasquale saw Kevin McConkey, an individual with whom the group had had a previous argument, and the DePasquale car began to chase him.[6] During the chase, there was a collision involving the vehicle of one of the defendant's friends[7] and McConkey's car. Following the collision, one of the defendant's friends got out of his car and chased McConkey. McConkey hit the defendant's friend with his car and sped away.

Later that evening, the defendant met with DePasquale, Ferguson, Frank Straub and two other individuals at a water pump station in Montville. The defendant drove the group to a gasoline station to purchase cigarettes and snacks. The defendant then drove the group to another friend's house to pick up two red, one gallon gasoline cans that were placed in the trunk of the defendant's car. The defendant next drove the group back to the gasoline station, where the gasoline cans were removed from the trunk, filled with gasoline and placed back in the trunk. While DePasquale filled the gasoline cans, Ferguson went inside and obtained six coffee cups. DePasquale testified that he believed that at each of those stops, the defendant opened the trunk via a release mechanism inside the vehicle.

After DePasquale filled the gasoline cans, at approximately 2 a.m., the defendant drove the group to an auto body repair shop where DePasquale previously had noticed a red Ford Escort.[8] There, the defendant

[6] The defendant's car did not engage in that chase.

[7] It is unclear from the testimony adduced at trial whether that was the car carrying DePasquale or the third car that left the pool hall.

[8] DePasquale believed that the car belonged to a person with whom he had had a previous argument. Other testimony was elicited that the car was believed to have belonged to DePasquale's former girlfriend. The car in fact belonged to an unrelated party who testified that the car had a value of $4484.

again opened the trunk from the inside of the car, and DePasquale exited the vehicle, took one of the cans of gasoline from the trunk, poured it over the interior and exterior of the Escort and set the car on fire. The fire inspector testified that in lighting the car on fire, DePasquale exposed the volunteers, firefighters and police officers who responded to the scene to a substantial risk of injury.

The defendant then drove the group to McConkey's house and parked the car around the corner in an area where it could not be seen. He once again opened the trunk from the inside of the car to allow access to the gasoline cans. This time, several individuals exited the vehicle, filled the coffee cups Ferguson had obtained with gasoline, emptied the cups over the interior and exterior of McConkey's car, and DePasquale set the car on fire.[9] The fire burned so hot that it melted the bumper and taillight of another car parked approximately twenty feet away.[10] The defendant then drove the group away from the scene.

The defendant claims that there was insufficient evidence to support his conviction. The crux of his claim is the state's alleged failure to prove that he intentionally aided in the commission of the crimes. The defendant argues that no evidence was produced from which the jury could have found that he had prior knowledge of the group's plan to commit the arsons and that he intentionally aided in their commission. We disagree.

[9] Although the group was attempting to destroy the vehicle that McConkey was driving that evening, the group actually set fire to an identical car, which did not operate, that McConkey was using for spare parts. Because the state did not introduce any evidence as to the value of that car, an original charge of criminal mischief in the first degree was reduced to criminal mischief in the third degree. The fire marshal testified that the car fire exposed the residents of the surrounding houses, as well as the firefighters and police officers who responded to the scene, to a substantial risk of bodily harm.

[10] The damage to that car gave rise to the conviction of arson in the third degree and criminal mischief in the third degree.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State* v. *Bermudez*, 79 Conn. App. 275, 280, 830 A.2d 288, cert. granted on other grounds, 266 Conn. 921, 835 A.2d 61 (2003).

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Charles*, 78 Conn. App. 125, 139, 826 A.2d 1172, cert. denied, 266 Conn. 908, 832 A.2d 73 (2003).

General Statutes § 53a-8 (a) provides in relevant part: "A person, acting with the mental state required for commission of an offense, who . . . intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender." "It is axiomatic that a jury may infer intent from behavior. As our Supreme Court has

stated, direct evidence of the accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom." (Internal quotation marks omitted.) *State* v. *Raynor*, 84 Conn. App. 749, 760, 854 A.2d 1133, cert. denied, 271 Conn. 935, 861 A.2d 511 (2004).

In this case, the state presented ample evidence from which the jury could find that the defendant intended to aid in the commission of the crimes. DePasquale testified that some time after the car chase and accident, the group involved in the original altercation at Crown Billiards, including Ferguson and the defendant, reunited at a local water pumping station. The defendant then drove the group to get two gasoline cans and drove to a gasoline station to purchase gasoline. While at the gasoline station, Ferguson went inside and obtained six coffee cups. There also was testimony that there were six individuals in the car that evening. From the totality of that evidence, the jury reasonably could have inferred that there was a known plan to burn the two cars. As further evidence of the defendant's knowledge of that plan, the gasoline station attendant, Sandra McCracken, testified that at the same time that DePasquale was outside filling the gasoline cans, the defendant was inside telling her about the car chase and resulting accident. From that testimony, the jury reasonably could have inferred that the group members were talking about the car chase and their plan for revenge when they met at the water pumping station. Coupled with the defendant's knowledge of the plan were his actions in driving the group to get the gasoline cans, driving to the scenes of each of the arsons, opening the trunk at each stop to allow access to the gasoline cans used in the commission of the crimes and waiting in the car so as to facilitate a speedy getaway.

Neither the state nor the defendant elicited testimony that the defendant had objected to what was happening at any time during the evening, nor had he taken any action to stop the others. In fact, the defendant actively participated in the commission of the crimes by driving to the scenes of the arsons, opening the trunk to allow access to the needed gasoline cans and driving away. It was thus reasonable for the jury to conclude that those were not the actions of an innocent party, but rather the actions of one who knew that these arsons were going to take place and who intentionally aided in their commission.

Therefore, it was reasonable for the jury to conclude, on the basis of the evidence presented and the reasonable inferences drawn therefrom, that the defendant intended to burn the two cars and, to that end, intentionally aided DePasquale and the others by driving his car and opening the trunk to allow access to the gasoline used in the arsons. As a result, the defendant's sufficiency of the evidence claim must fail.

The judgment is affirmed.

In this opinion the other judges concurred.