## STATE OF CONNECTICUT *v.* NOEL BERMUDEZ
## (SC 17081)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

---

Argued February 16—officially released July 26, 2005

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom were *Terence Mariani*, assistant state's attorney, and, on the brief, *John A. Connelly*, state's attorney, for the appellant (state).

*Ralph C. Crozier*, with whom, on the brief, was *Michael P. Gannon*, for the appellee (defendant).

*Opinion*

VERTEFEUILLE, J. The dispositive issue in this certified appeal is whether the Appellate Court properly concluded that the defendant, Noel Bermudez, was deprived of a fair trial due to prosecutorial misconduct and the trial court's overemphasis of the charge of manslaughter in the first degree in its instructions to the jury. The state claims that the Appellate Court improperly concluded that the defendant was deprived of his right to a fair trial by: (1) remarks made by the assistant state's attorney (state's attorney) during his closing and rebuttal arguments; and (2) the trial court's appearance of partiality in its instructions to the jury on the charge of manslaughter in the first degree. We agree with the

state, and, accordingly, we reverse the judgment of the Appellate Court.

The Appellate Court opinion sets forth the following facts, which reasonably could have been found by the jury. "At approximately 4 a.m., on June 23, 2000, a Chevrolet Tracker was stopped at a red traffic signal on Chase Avenue in Waterbury. The vehicle the defendant was driving approached the traffic light traveling in the same direction as the Tracker. It struck the rear end of the Tracker at a speed of more than ninety miles per hour. The occupants of the Tracker, Stacy Maia and Nicolina Baratta, both died as a result of the collision. Cecilio Quinones, a passenger in the front seat of the defendant's vehicle, sustained fatal injuries as a result of the collision. Samuel Tirado, a second passenger in the defendant's vehicle sustained serious but nonfatal injuries as a result of the collision. It was later determined that the defendant was under the influence of marijuana and phencyclidine, also known as PCP, at the time of the collision. Immediately following the collision, the defendant climbed [through] the [broken] windshield of his vehicle as the driver's door would not open. The defendant pulled Quinones from the front seat of the vehicle. The defendant then collapsed next to Quinones on the street." *State* v. *Bermudez*, 79 Conn. App. 275, 277–78, 830 A.2d 288 (2003).

The defendant subsequently was arrested and charged with three counts of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3), and one count of assault in the first degree in violation of General Statutes § 53a-59 (a) (3). During a jury trial, after the state rested, the defendant sought to have the charges dismissed, and further sought a judgment of acquittal as to all four counts. The court denied the defendant's motion for a judgment of acquittal, and the defendant subsequently was convicted of three counts of manslaughter in the first degree, and one count of

the lesser included offense of assault in the third degree. Id., App. 278.

The defendant then appealed from the judgment of conviction to the Appellate Court, claiming that the evidence was insufficient to sustain his conviction, that the statements of the state's attorney during closing argument violated the defendant's right to a fair trial, that the trial court improperly excluded evidence of a witness' prior inconsistent statements, that the trial court improperly admitted into evidence the defendant's hospital records, and that the trial court created an appearance of partiality by overemphasizing the jury instructions on manslaughter in the first degree, which the defendant claimed further violated his right to a fair trial. Id., 277. The Appellate Court concluded that the defendant was deprived of his right to a fair trial because the state's attorney had engaged in prosecutorial misconduct by making improper statements during closing argument and because the trial court had created an appearance of partiality by overemphasizing the manslaughter jury charge.[1] Id., 277 and n.3 Accordingly, the Appellate Court reversed the judgment of the trial court and ordered a new trial. Id., 277. Thereafter, we granted the state's petition for certification to appeal, limited to the following question: "Did the Appellate Court properly conclude that: (1) prosecutorial misconduct deprived the defendant of a fair trial; and (2) the trial court improperly overemphasized the charge of manslaughter in the first degree in its instructions to the jury?" *State* v. *Bermudez*, 266 Conn. 921, 835 A.2d 61 (2003). This appeal followed.

## I

## PROSECUTORIAL MISCONDUCT

The Appellate Court concluded that the state's attorney had made numerous remarks during his closing

[1] The Appellate Court further concluded that there was no merit to the defendant's insufficiency of the evidence claim, and it did not address the

and rebuttal arguments that constituted prosecutorial misconduct, and deprived the defendant of his right to a fair trial. *State* v. *Bermudez*, supra, 79 Conn. App. 287–88. The state claims that four of the comments of the state's attorney at issue did not constitute prosecutorial misconduct. Although the state concedes that two additional comments were improper, it nevertheless claims that the remarks were not of the egregious nature necessary to be considered a violation of the defendant's right to a fair trial. The defendant counters that all of the comments of the state's attorney at issue were improper and rose to the level of a violation of his right to a fair trial. We agree with the state.

We begin by setting forth the applicable standard of review. Ordinarily, when a defendant fails to preserve a claim for appellate review, we will not review the claim unless the defendant is entitled to prevail under the plain error doctrine or the rule set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). See *State* v. *Ramos*, 261 Conn. 156, 171, 801 A.2d 788 (2002). "Under *Golding*, a defendant can prevail on an unpreserved claim of constitutional error only if the following conditions are satisfied: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *DeJesus*, 260 Conn. 466, 472, 797 A.2d 1101 (2002).

In cases of unpreserved claims of prosecutorial misconduct, however, "it is unnecessary for the defendant

defendant's remaining claims. *State* v. *Bermudez*, supra, 79 Conn. App. 277 n.3, 282.

to seek to prevail under the specific requirements of . . . *Golding* and, similarly, it is unnecessary for a reviewing court to apply the four-pronged *Golding* test. The reason for this is that the touchstone for appellate review of claims of prosecutorial misconduct is a determination of whether the defendant was deprived of his right to a fair trial, and this determination must involve the application of the factors set out by this court in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987). . . . Regardless of whether the defendant has objected to an incident of misconduct, a reviewing court must apply the *Williams* factors to the entire trial, because there is no way to determine whether the defendant was deprived of his right to a fair trial unless the misconduct is viewed in light of the entire trial. The application of the *Williams* factors, therefore, is identical to the third and fourth prongs of *Golding*, namely, whether the constitutional violation exists, and whether it was harmful. *State* v. *Golding*, supra, 213 Conn. 240. Requiring the application of both *Williams* and *Golding*, therefore, would lead . . . to confusion and duplication of effort. Furthermore, the application of the *Golding* test to unchallenged incidents of misconduct tends to encourage analysis of each incident in isolation from one another. Because the inquiry must involve the entire trial, all incidents of misconduct must be viewed in relation to one another and within the context of the entire trial. The object of inquiry before a reviewing court in [due process] claims involving prosecutorial misconduct, therefore, is always and only the fairness of the entire trial, and not the specific incidents of misconduct themselves. Application of the *Williams* factors provides for such an analysis, and the specific *Golding* test, therefore, is superfluous. In light of these observations, we conclude that, following a determination that prosecutorial misconduct has occurred, regardless of whether it was objected to, an appellate court must apply the *Williams* factors to the entire trial.

"This does not mean, however, that the absence of an objection at trial does not play a significant role in the application of the *Williams* factors. To the contrary, the determination of whether a new trial or proceeding is warranted depends, in part, on whether defense counsel has made a timely objection to any [incident] of the prosecutor's improper [conduct]. When defense counsel does not object, request a curative instruction or move for a mistrial, he presumably does not view the alleged impropriety as prejudicial enough to seriously jeopardize the defendant's right to a fair trial. . . . [Thus], the fact that defense counsel did not object to one or more incidents of misconduct must be considered in determining whether and to what extent the misconduct contributed to depriving the defendant of a fair trial and whether, therefore, reversal is warranted." (Internal quotation marks omitted.) *State* v. *Ancona*, 270 Conn. 568, 591–93, 854 A.2d 718 (2004), cert. denied, 543 U.S. 1055, 125 S. Ct. 921, 160 L. Ed. 2d 780 (2005).

In examining claims of prosecutorial misconduct, "we engage in a two step analytical process. The two steps are separate and distinct: (1) whether misconduct occurred in the first instance; and (2) whether that misconduct deprived a defendant of his due process right to a fair trial. Put differently, misconduct is misconduct, regardless of its ultimate effect on the fairness of the trial; whether that misconduct caused or contributed to a due process violation is a separate and distinct question that may only be resolved in the context of the entire trial . . . ." (Internal quotation marks omitted.) *State* v. *Coney*, 266 Conn. 787, 808, 835 A.2d 977 (2003). In order to determine whether any improper conduct by the state's attorney violated the defendant's right to a fair trial, we will consider the factors set forth in *State* v. *Williams*, supra, 204 Conn. 540.

We previously have recognized that "prosecutorial misconduct of a constitutional magnitude can occur in the course of closing arguments. . . . In determining

whether such misconduct has occurred, the reviewing court must give due deference to the fact that [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom. . . . Moreover, [i]t does not follow . . . that every use of rhetorical language or device [by the prosecutor] is improper. . . . The occasional use of rhetorical devices is simply fair argument. . . . Nevertheless, the prosecutor has a heightened duty to avoid argument that strays from the evidence or diverts the jury's attention from the facts of the case." (Citation omitted; internal quotation marks omitted.) *State* v. *Thompson*, 266 Conn. 440, 458, 832 A.2d 626 (2003).

We turn now to the portions of the closing and rebuttal arguments of the state's attorney that the Appellate Court concluded were improper. The Appellate Court concluded that the state's attorney improperly expressed his opinions regarding the credibility of certain witnesses and the ultimate issue of the defendant's guilt. *State* v. *Bermudez*, supra, 79 Conn. App. 282. Specifically, the Appellate Court concluded that during closing argument, the state's attorney improperly: (1) expressed his personal opinion about the credibility of Elliston Skyers, one of the state's witnesses; (2) personally vouched for the credibility of Thomas Meier, another of the state's witnesses; (3) suggested that Gloria Demaris Garcia, a defense witness, was lying during her testimony; (4) suggested that Garcia might be charged with perjury as a result of her testimony; (5) appealed to the jury's emotions; and (6) expressed his

personal opinion as to the defendant's guilt. Id., 287–88. We address each of these remarks in turn.

## A

### Opinion Regarding the Credibility of Witnesses

We begin by setting forth the well settled rule that, "a prosecutor may not express his own opinion, directly or indirectly, as to the credibility of the witnesses. . . . Nor should a prosecutor express his opinion, directly or indirectly, as to the guilt of the defendant. . . . Such expressions of personal opinion are a form of unsworn and unchecked testimony, and are particularly difficult for the jury to ignore because of the prosecutor's special position. . . . Moreover, because the jury is aware that the prosecutor has prepared and presented the case and consequently, may have access to matters not in evidence . . . it is likely to infer that such matters precipitated the personal opinions." (Internal quotation marks omitted.) *State* v. *Ancona*, supra, 270 Conn. 605. While a prosecutor cannot express his opinion as to the credibility of witnesses, he is permitted "to explain that a witness either has or does not have a motive to lie." Id., 607. Further, "[i]t is not improper for the prosecutor to comment upon the evidence presented at trial and to argue the inferences that the jurors might draw therefrom . . . . We must give the jury the credit of being able to differentiate between argument on the evidence and attempts to persuade them to draw inferences in the state's favor, on one hand, and improper unsworn testimony, with the suggestion of secret knowledge, on the other hand. The state's attorney should not be put in the rhetorical straitjacket of always using the passive voice, or continually emphasizing that he is simply saying I submit to you that this is what the evidence shows, or the like." (Citation omitted; internal quotation marks omitted.) *State* v. *Thompson*, supra, 266 Conn. 465–66. "[C]ounsel is entitled to considerable

leeway in deciding how best to highlight or to underscore the facts, and the reasonable inferences to be drawn therefrom, for which there *is* adequate support in the record. We therefore never have categorically barred counsel's use of such rhetorical devices . . . as long as there is no reasonable likelihood that the particular device employed will confuse the jury or otherwise prejudice the opposing party." (Emphasis in original.) *State* v. *Ancona,* supra, 598. With these principles in mind, we turn to the state's specific claims.

1

Skyers

The state's first witness at trial was Skyers, who witnessed the accident from his place of employment. Skyers testified that after he saw the collision, he ran to the defendant's vehicle, where he pulled a passenger, later identified as Tirado, from the back seat. When questioned about his motivation to testify, Skyers stated that he testified only as a result of a subpoena, and that he was not partial to either party. Garcia, a defense witness, later testified that she had pulled Tirado from the back seat, which conflicted with Skyers' testimony. During closing argument, the state's attorney referred to Skyers' testimony, stating that "Skyers is a neutral witness. He doesn't know the defendant for ten years. He didn't want to be involved in this case. He came in and he told you what he saw after he had given a statement to the police. . . . Why would he make that up? How would he forget that? How could that be anything but the truth? I mean, examine the credibility of the witnesses. What would possess somebody to make that up? I submit to you that based on this evidence, Skyers is the person who pulled [Tirado] out of the back of that car."

The Appellate Court concluded that through these statements, the state's attorney expressed his personal

opinion as to the credibility and neutrality of Skyers. *State* v. *Bermudez*, supra, 79 Conn. App. 287. The state claims that these statements during closing argument were proper in that the state's attorney was emphasizing the evidence that supported Skyers' credibility as a witness. We agree. In making these remarks, the state's attorney did not offer his own opinion as to the credibility of Skyers' testimony. Rather, he argued that Skyers had no motive to lie about what occurred at the scene of the accident, and cited the evidence that supported the credibility of Skyers' testimony. This argument was not improper.

2

Meier

The state also called as a witness Meier, a lieutenant for the Waterbury fire department who arrived at the scene of the accident shortly after hearing the collision, which occurred next to the fire station to which Meier was assigned. Meier testified that he had observed the defendant climb out of his vehicle through the front windshield, and that he had observed a person, later determined to be Quinones, in the front passenger seat with the seat "buckled up against him."

During closing argument, the state's attorney stated: "Then you have another neutral party, someone who has nothing to gain, didn't know anybody involved in the case, is the lieutenant from the fire department. . . . Here's what I expect you to take away from [Meier's] testimony: He heard the crash. He woke up. He got out there as quickly as he could and he saw the defendant climbing through the windshield. That's not contradicted by any other testimony that the state presented in this case. And it's supported by the physical evidence. He sees the defendant climb out of the windshield, goes over to the passenger door, looks in the car and sees another person in the passenger seat. Doesn't see Tir-

ado in the back seat because the car door is not open. And Meier's testimony was he was assessing people. It didn't look like [Quinones] could be helped. That turned out to be true. So Meier goes back over to the Tracker [the car that was hit]. . . . When he's headed back over to the Tracker, his back is to the [defendant's car]. That's why he never sees Skyers pulling [Tirado] out of the back of the car. And that's why he doesn't know until all these events have unfolded that, in fact, there was a third person involved. It's a hectic scene. He was asked about [twenty-five] times, 'Are you sure you saw somebody climbing out of the windshield?' Is that something you would forget? Is that something that he would make up? Of course not. That is reliable, sworn testimony."

The Appellate Court concluded that, as with the comments made by the state's attorney about Skyers' testimony, this also was an improper expression of personal opinion regarding the credibility and neutrality of a state's witness. *State* v. *Bermudez*, supra, 79 Conn. App. 287. The state again argues that the remarks made by the state's attorney were based on the evidence and reasonable inferences that could be drawn from the evidence, and accordingly, they were not improper. We agree with the state. As with his comments concerning Skyers' testimony, the state's attorney did not offer his own opinion as to the credibility of Meier's testimony. He argued that Meier was a neutral witness who had nothing to gain by testifying falsely about what he had observed at the scene of the accident, and that Meier's testimony was not contradicted by that of the other witnesses for the state. These statements were not improper.

3

Garcia

Garcia, a defense witness, testified that, as she approached the scene of the accident, she had observed

the defendant exit his vehicle through the back seat on the driver's side. She further testified that the defendant did *not* exit the car through the windshield, and that she was "positive" that Quinones was behind the steering wheel when she approached the car. On direct examination, the defendant's attorney asked Garcia if she was "here to lie for anyone," to which she responded that she was not. On cross-examination by the state's attorney, Garcia was asked, "Are you aware of the penalties for perjury?" Garcia responded that she was, and when she was asked if she was aware that perjury is a felony that can result in incarceration, she responded that she was aware of that as well. On redirect examination, Garcia testified that in a previous out-of-court meeting, the state's attorney had warned her that she could be arrested for perjury, and she further testified that when she first met with the state's attorney, she had not yet spoken to the defendant's attorney. On recross-examination, Garcia confirmed that during the out-of-court meeting with the state's attorney, he had told her that if he could *prove* that she was lying, she could be arrested for perjury.

During his closing argument, the state's attorney said of Garcia's testimony: "Her testimony makes no sense. And I'm sure it's hard to accept, but people do come in here, they raise their right hand and swear to tell the truth and they lie. And that's what the evidence in this case shows about [Garcia]. That's what I told her, as [defense counsel] brought out, when I heard her story in my office. I said to her, if you get up there and you tell something that's not true and we can prove it, you're going to be arrested for perjury. Based on the record in this case, and the eyewitnesses, [Meier and Skyers], [Garcia] is not telling the truth."

The Appellate Court concluded that the remarks made by the state's attorney during closing argument suggesting that Garcia could be charged with perjury

were improper. *State* v. *Bermudez*, supra, 79 Conn. App. 287. The Appellate Court specifically determined that "[t]he jury easily could have inferred from the prosecutor's remarks that he had information outside of the evidence that the witness was indeed lying. Those statements constituted an inappropriate attack on the witness' credibility because they implied that the prosecutor had knowledge outside the record about the witness' credibility." Id. The state, however, maintains that the state's attorney simply remarked on the testimony that was presented at trial, that he had a conversation with Garcia and informed her of the risk of perjuring herself. The state further argues that the state's attorney made clear in his closing argument that his statement that Garcia had lied was based on the evidence, including the testimony of the state's witnesses and the physical evidence. We agree.

The state's attorney did not infer that he had information outside the evidence that Garcia's testimony constituted perjury. During closing argument, the state's attorney simply commented on evidence already in the record, e.g., that he had informed Garcia of the possible consequences of committing perjury. The state's attorney further argued that based on the other evidence presented at trial, Garcia's testimony could not be true. There is nothing improper in commenting on the evidence presented by both the defendant and the state.

B

Appeal to the Jury's Emotions

It is well established that, "[a] prosecutor may not appeal to the emotions, passions and prejudices of the jurors. . . . We have stated that such appeals should be avoided because they have the effect of diverting the jury's attention from their duty to decide the case on the evidence. . . . When the prosecutor appeals to emotions, he invites the jury to decide the case, not

according to a rational appraisal of the evidence, but on the basis of powerful and irrelevant factors which are likely to skew that appraisal." (Citations omitted; internal quotation marks omitted.) *State* v. *Rizzo*, 266 Conn. 171, 255, 833 A.2d 363 (2003).

During closing argument, defense counsel commented on the state's attack on the credibility of the defense witnesses, saying, "[the] [s]tate wants you to believe they are all liars. Only four people who can tell you anything of importance, but they are all liars. Why? Because it doesn't fit into their little agenda of convicting a live person for the bizarre acts of a man on PCP." During his rebuttal argument, the state's attorney stated: "[T]here are so many areas that [defense counsel] talked about that I think they're just inaccurate. And it all goes under the heading, and this was a quote, of course, referring particularly to me and to the witnesses, of course they all have their hidden agendas. I have no hidden agenda against [the defendant]. The driver in that accident deserved to die. That would have been justice. If I had my way, that's how this case would have played out, not the innocent people dying. So my hidden agenda and the witnesses' hidden agendas is not to put responsibility where it doesn't belong, but what we do is we bring the case forward to you. And I don't understand, I really don't know how [defense counsel] can stand up in front of you and say with a straight face there is not one iota, not one iota of evidence that [the defendant] was driving the car. You sat here and listened to the case. There's a mountain of evidence that he was driving the car."

The Appellate Court concluded that by stating that justice would have been served had the defendant died instead of the victims, the state's attorney improperly expressed his personal opinion. *State* v. *Bermudez*, supra, 79 Conn. App. 288. The state claims that when read in the context of the defendant's claims about the

state's "agenda," the comments of the state's attorney were not an improper appeal to the jury's emotions. We disagree with the state.

By telling the jury that justice would have been well served had the defendant died instead of the victims, the state's attorney improperly appealed to the jurors' emotions. The state's attorney could have responded to the accusation that the state had an agenda in prosecuting the defendant without making the inflammatory statement that the defendant deserved to die in the car accident. By injecting that comment, the state's attorney improperly appealed to the jurors' passions and emotions. Accordingly, we agree with the Appellate Court that this comment by the state's attorney was improper.

C

Personal Opinion as to the Defendant's Guilt

During his closing argument, defense counsel told the jury: "Over the last two weeks you may have thought that I pressed a witness unfairly. I think 'attacked' was the word used. That I urged an unfair advantage. That I asked an unworthy question, or I acted improperly either with brother counsel or with his Honor. If I exceeded the proper limits in your mind, I implore you to forgive me, but, you see, I'm the only advocate for [the defendant]. I'm the one who gets up here and does the best I can for him. And his life and his future is at stake, and I take it extraordinarily seriously, extraordinarily seriously. I have been doing it a quarter century. This is not my first homicide by any stretch of the imagination." In response, during his rebuttal argument, the state's attorney said, "I may not have been practicing law for a quarter of a century or [twenty-five] years like [defense counsel], but I'll tell you, I tried a lot of criminal cases, and I've stood in front of a lot of juries and I've asked a lot of juries to convict a lot of people and they have." In discussing the defendant's recklessness, the

state's attorney further stated: "Of course any one of us would know that driving around [at a high rate of speed while high on marijuana and PCP] is a risk and the evidence shows that he just ignored it. He's responsible. He killed three people. It's not a murder trial, but there's three people dead."

The Appellate Court concluded that the state's attorney improperly buttressed his opinion of the defendant's guilt by comparing it to previous cases he successfully had prosecuted, and further that he expressed his opinion on the ultimate issue of the defendant's guilt. *State* v. *Bermudez*, supra, 79 Conn. App. 288. The state disagrees, claiming that when read in context, the comments of the state's attorney simply responded to defense counsel's reference to his own experience as a defense attorney, and further, that the remarks on the defendant's recklessness were based on the evidence in the case and not on the state's attorney's personal opinion. We conclude that the remarks of the state's attorney with regard to recklessness were proper, but that his reference to the previous convictions he had obtained were improper.

As we stated previously, "a prosecutor may not express his own opinion, directly or indirectly, as to the credibility of witnesses." (Internal quotation marks omitted.) *State* v. *Ancona*, supra, 270 Conn. 605. "[I]t is well established that the evaluation of witnesses' testimony and credibility are wholly within the province of the trier of fact." (Internal quotation marks omitted.) *State* v. *Morales*, 90 Conn. App. 82, 95, 876 A.2d 561, cert. denied, 275 Conn. 924, 885 A.2d 1250 (2005). By referring to his experience prosecuting cases and convincing juries to convict defendants, the state's attorney improperly sought to have the jury trust his judgment and analysis of the evidence as previous juries had. It is for the jury, however, and not the state's attorney, to decide if there is reasonable doubt as to the defendant's

guilt. His remarks about the defendant's recklessness did not constitute his personal opinion as to the ultimate issue of the defendant's guilt, however, because they were tied to the evidence in the case. "[T]he *evidence* shows that [the defendant] just ignored [the risk of driving recklessly]." (Emphasis added.)

## D

### Due Process Analysis

We now consider whether the two identified improper statements, the comment of the state's attorney that the defendant deserved to die in the car accident and the reference by the state's attorney to his previous prosecutorial experience, "so infected the trial with unfairness as to make the [defendant's] conviction a denial of due process. . . . In other words, we must decide whether the sum total of [the state's attorney's] improprieties rendered the defendant's [trial] fundamentally unfair. . . . The question of whether the defendant has been prejudiced by prosecutorial misconduct . . . depends on whether there is a reasonable likelihood that the jury's verdict would have been different absent the sum total of the improprieties." (Citation omitted; internal quotation marks omitted.) *State* v. *Ancona*, supra, 270 Conn. 611–12.

We evaluate whether the prosecutorial misconduct amounted to a denial of due process by considering the following factors: "(1) the extent to which the misconduct was invited by defense [counsel's] conduct or argument; (2) the frequency and severity of the misconduct; (3) the centrality of the misconduct to the critical issues in the case; (4) the strength of any curative measures taken; (5) the strength of the state's case; and (6) whether the defendant objected to the misconduct." Id., 612; see also *State v. Williams*, supra, 204 Conn. 540. After considering the application of these factors to the present case, we conclude, contrary to the determination of the Appellate Court, that the misconduct

by the state's attorney did not deprive the defendant of a fair trial.

As to the first *Williams* factor, the state claims that defense counsel invited both the remark made by the state's attorney that the defendant deserved to die and his statement that he successfully had convinced many juries to convict the defendants in cases he had prosecuted. We agree with the state. Although it was improper for the state's attorney to remark that justice would have been served had the defendant died, the comment was made in response to defense counsel's statement that the state had a "little agenda of convicting a live person for the bizarre acts of a man on PCP." Similarly, while it was improper for the state's attorney to comment to the jury about his prior experience convincing juries that the defendants in his cases were guilty, he was responding to defense counsel's statement that, "I have been [advocating for defendants for] a quarter century. This is not my first homicide by any stretch of the imagination." While both statements by the state's attorney were improper, his argument was invited by defense counsel's statements of a similar nature.

With respect to the second *Williams* factor, the frequency and severity of the misconduct, the state contends that the improper statements did not constitute severe misconduct and did not recur frequently during the state's closing arguments. We agree. We note first that the defendant did not object to the state's improper comments during closing and rebuttal argument. "[W]e consider it highly significant that defense counsel failed to object to any of the improper remarks, request curative instructions, or move for a mistrial. Defense counsel, therefore, presumably [did] not view the alleged impropriety as prejudicial enough to seriously jeopardize the defendant's right to a fair trial. . . . Given the defendant's failure to object, only instances of grossly

egregious misconduct will be severe enough to mandate reversal." (Citation omitted; internal quotation marks omitted.) *State* v. *Thompson*, supra, 266 Conn. 479–80. We also consider it significant that the improper remarks made by the state's attorney consisted of only two instances of brief duration, which certainly is not grossly egregious when viewed in the context of the entire trial.

As to the third *Williams* factor, the state claims that the misconduct was not central to the critical issues in the case because of the existence of physical evidence that corroborated the testimony of the state's witnesses.[2] The outcome of the case, therefore, was not determined solely by weighing the credibility of the witnesses. Although the state's attorney did improperly appeal to the emotions of the jury and describe his success in front of previous juries, the crux of the present case was whether the jury was convinced that the defendant had been operating the car at the time of the collision. Thus, despite the improper nature of the remarks made by the state's attorney, they did not relate directly to the ultimate issue in this case.

As to the fourth *Williams* factor, the state further claims that the trial court mitigated the effect of the improper statements of the state's attorney through its charge to the jury. We agree. The trial court instructed the jurors: "You are the sole judges of the facts. It is your duty to find the facts. You are to recollect and weigh the evidence and form your own conclusions as to what the ultimate facts are. You may not go outside the evidence introduced in court to find the facts. This

[2] As the Appellate Court concluded, "[t]he jury reasonably could have determined that the defendant was the driver of the vehicle because it was owned by his live-in girlfriend, DNA evidence linked his blood to that [found] on the driver's door, he sustained injuries consistent with that of a driver in a head-on collision and he exited through the windshield, consistent with damage to the driver's door." *State* v. *Bermudez*, supra, 79 Conn. App. 281.

means that you may not resort to guesswork, conjecture, or suspicion. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. . . . Certain things are not in evidence. And you may not consider them in deciding what the facts are. And these include . . . [t]he arguments and the statements by the attorneys. The lawyers are not witnesses. What they have said in their closing arguments is intended to help you to interpret the evidence, but it is not evidence. If the facts, as you remember them, differ from the way the lawyers have stated them, your memory of the facts controls." This instruction likely alleviated the possible prejudicial effect of the improper statements of the state's attorney.

As to the strength of the state's case against the defendant, the fifth *Williams* factor, the state claims that the physical and testimonial evidence presented to the jury strongly supported the defendant's conviction. We agree. We previously have noted the physical evidence supporting conviction. See footnote 2 of this opinion. In addition, the state presented the testimony of Skyers and Meier, both of whom were neutral observers.

Finally, we note that the defendant did not object to *any* of the remarks made by the state's attorney during his closing and rebuttal arguments. As we stated previously, "we consider it highly significant that defense counsel failed to object to any of the improper remarks, request curative instructions, or move for a mistrial. Defense counsel, therefore, presumably [did] not view the alleged impropriety as prejudicial enough to seriously jeopardize the defendant's right to a fair trial." (Internal quotation marks omitted.) *State* v. *Thompson*, supra, 266 Conn. 479. Thus, after considering the factors set out in *State* v. *Williams*, supra, 204 Conn. 540, we conclude that the Appellate Court improperly determined that the improper statements of the state's attor-

ney during his closing and rebuttal arguments deprived the defendant of a fair trial.

## II

### JURY CHARGE

Although the Appellate Court reversed the defendant's conviction and ordered a new trial based on its determination of prosecutorial misconduct, the Appellate Court also stated in a footnote that, "the [trial] court violated the defendant's right to a fair trial by overemphasizing the instructions on manslaughter in the first degree." *State* v. *Bermudez*, supra, 79 Conn. App. 277 n.3. The state claims on appeal that the trial court did not overemphasize the manslaughter charges when compared with the instructions for the lesser included offenses, and that the trial court did not suggest that the state had sustained its burden of proof as to the manslaughter charge. The defendant counters that the trial court read and explained the statute on manslaughter in the first degree five times when charging the jury, whereas it did not do the same when charging the jury on the lesser offenses, and accordingly, the trial court violated the defendant's right to a fair trial by failing to maintain an atmosphere of impartiality. We agree with the state.

We begin by setting forth the applicable standard of review. "When reviewing the challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues

and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Denby*, 235 Conn. 477, 484–85, 668 A.2d 682 (1995).

"In a criminal trial, the judge is more than a mere moderator of the proceedings. It is [the judge's] responsibility to have the trial conducted in a manner which approaches an atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding." (Internal quotation marks omitted.) *State* v. *Colon*, 272 Conn. 106, 362, 864 A.2d 666 (2004). Specifically, in the context of the trial court's instructions to the jury, the trial court's statements should "demonstrate the overall impartial and unbiased nature of the jury charge." *State* v. *Davis*, 255 Conn. 782, 799, 772 A.2d 559 (2001). With these principles in mind, we turn to the jury charge in the present case.

During the third part of the trial court's charge to the jury, the trial court read the manslaughter in the first degree statute three separate times. Before reading it for the third time, the trial court said, "[t]here's three counts, so there's no harm in reading it three times." The trial court then read the elements of manslaughter in the first degree two more times in the context of explaining the other charges. After the trial court instructed the jury as to the specific charges, defense counsel took exception, stating: "With regards to your instructions on manslaughter in the first degree, Your Honor said it five times. You read it five times to them. Manslaughter in the second degree you read it twice. And negligent homicide you read once to them and only once to them. Therefore, I object to the emphasis on the manslaughter in the first degree, having read it to them five times." In response, the trial court explained its method of charging the jury, stating that, "repeating is an effort on my part for them to understand the top charge. Once they understand the top charge, I don't

need to repeat as often when I'm talking about a lesser included offense which contains many of the same elements, and would be, I think, repeating that point, would become confusing to them."

While the trial court did state the elements of manslaughter in the first degree with greater frequency than the elements of the lesser included offenses, it did so as part of its stated method of helping the jury understand the "top charge" and then continuing with the lesser included offenses. Further, the defendant was charged with three counts of manslaughter in the first degree, so the first three readings of the statute accounted for the three different counts, as clarified by the trial court when the charges were read. The trial court's repeated reading of the elements of manslaughter in the first degree was an attempt to clarify to the jury the differences between the various charges, and was not evidence that the trial court lacked impartiality. We carefully have reviewed the charge as a whole, and we do not see any evidence of partiality on the part of the trial court. Accordingly, we conclude that the Appellate Court improperly determined that the trial court violated the defendant's right to a fair trial by overemphasizing the manslaughter charge.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to consider the defendant's remaining claims.

In this opinion the other justices concurred.