# STATE OF CONNECTICUT *v.* NOEL BERMUDEZ
## (AC 22949)

Lavery, Schaller and West, Js.

578

Submitted February 23—officially released May 23, 2006

*Ralph C. Crozier*, with whom, on the brief, was *Michael P. Gannon*, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Terence D. Mariani*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. This criminal appeal returns to this court on remand from our Supreme Court; *State* v. *Bermudez*, 274 Conn. 581, 876 A.2d 1162 (2005); for resolution of the remaining claims of the defendant, Noel Bermudez. The defendant was convicted, following a jury trial, of three counts of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3) and one count of assault in the third degree in

violation of General Statutes § 53a-61.[1] *State* v. *Bermudez*, 79 Conn. App. 275, 276–77, 830 A.2d 288 (2003), rev'd, 274 Conn. 581, 876 A.2d 1162 (2005).

In his first appeal, the defendant claimed that "(1) the evidence was insufficient to sustain his conviction, (2) the prosecutor engaged in misconduct that violated the defendant's right to a fair trial, (3) the court improperly excluded evidence of a witness' prior inconsistent statements, (4) the court improperly admitted into evidence the defendant's hospital records and (5) the court violated the defendant's right to a fair trial by overemphasizing the jury instructions on manslaughter in the first degree." Id., 277. In our decision, we concluded that the evidence was sufficient to sustain the defendant's conviction. Id., 282. We determined, however, that the prosecutor had engaged in misconduct that deprived the defendant of his constitutional right to a fair trial and reversed the judgment. Id., 289. We further held that the court improperly overemphasized the jury instructions on manslaughter in the first degree. Id., 277 n.3.

Our Supreme Court granted the state's petition for certification to appeal, limited to the issues: "Did the Appellate Court properly conclude that: (1) prosecutorial misconduct deprived the defendant of a fair trial; and (2) the trial court improperly overemphasized the charge of manslaughter in the first degree in its instructions to the jury?" (Internal quotation marks omitted.) *State* v. *Bermudez*, 266 Conn. 921, 835 A.2d 61 (2003). Our Supreme Court ultimately concluded that this court improperly reversed the judgment on the ground of prosecutorial misconduct and that the trial court properly instructed the jury on manslaughter in the first degree. *State* v. *Bermudez*, supra, 274 Conn. 602–605.

---

[1] The defendant was committed to the custody of the commissioner of correction for a total effective sentence of fifty-one years incarceration.

The judgment of this court was reversed and the case remanded with direction to consider the defendant's remaining claims on appeal. Id., 605. At the instruction of our Supreme Court, we now consider whether the trial court improperly (1) excluded evidence of a witness' prior inconsistent statements and (2) admitted the defendant's hospital records into evidence.[2] We affirm the judgment of the trial court.

The facts underlying the defendant's conviction were set out at length in *State* v. *Bermudez*, supra, 79 Conn. App. 275. "At approximately 4 a.m., on June 23, 2000, a Chevrolet Tracker was stopped at a red traffic signal on Chase Avenue in Waterbury. The vehicle the defendant was driving approached the traffic light traveling in the same direction as the Tracker. It struck the rear end of the Tracker at a speed of more than ninety miles per hour. The occupants of the Tracker, Stacy Maia and Nicolina Baratta, both died as a result of the collision. Cecilio Quinones, a passenger in the front seat of the defendant's vehicle, sustained fatal injuries as a result

---

[2] The defendant also argued that "the prosecutor committed misconduct by failing to disclose in a timely manner six audiotapes of radio transmissions and 911 calls between the fire department, police department, dispatchers and ambulances. That argument has been preserved for review." *State* v. *Bermudez*, supra, 79 Conn. App. 282 n.7. We previously did not address the merits of this preserved claim of prosecutorial misconduct because we had reversed the judgment on the basis of the defendant's unpreserved prosecutorial misconduct claims.

On remand, we decline to review this claim due to the defendant's failure to brief it adequately. "This court is not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . *State* v. *Colon*, 272 Conn. 106, 153 n.19, 864 A.2d 666 (2004)." (Internal quotation marks omitted.) *State* v. *Nixon*, 91 Conn. App. 333, 338 n.1, 880 A.2d 199, cert. denied, 276 Conn. 911, 886 A.2d 426 (2005). As our Supreme Court has explained: "[When] the parties cite no law and provide no analysis of their claims, we do not review such claims." (Internal quotation marks omitted.) *State* v. *Cancel*, 275 Conn. 1, 3 n.2, 878 A.2d 1103 (2005). Accordingly, we do not review the defendant's preserved claim of prosecutorial misconduct.

of the collision. Samuel Tirado, a second passenger in the defendant's vehicle sustained serious but nonfatal injuries as a result of the collision. It was later determined that the defendant was under the influence of marijuana and phencyclidine, also known as PCP, at the time of the collision.

"Immediately following the collision, the defendant climbed out of the windshield of his vehicle as the driver's door would not open. The defendant pulled Quinones from the front seat of the vehicle. The defendant then collapsed next to Quinones on the street.

"The defendant was arrested on an information dated October 2, 2000. The defendant was charged with three counts of manslaughter in the first degree in violation of § 53a-55 (a) (3) and one count of assault in the first degree in violation of General Statutes § 53a-59 (a) (3). A jury trial began on January 10, 2002. After the state rested, the defendant sought to have all of the charges dismissed and to obtain a judgment of acquittal as to all four counts. The court denied the defendant's motion for a judgment of acquittal. The defendant was convicted of three counts of manslaughter in the first degree and one count of the lesser included offense of assault in the third degree." *State* v. *Bermudez,* supra, 79 Conn. App. 277–78. Additional facts will be set forth as necessary.

We now set forth the standard of review applicable to both of the defendant's claims. "It is axiomatic that [t]he trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse

of discretion." (Internal quotation marks omitted.) *State* v. *William C.*, 267 Conn. 686, 700–701, 841 A.2d 1144 (2004); see also *State* v. *Skakel*, 276 Conn. 633, 723–24, 888 A.2d 985 (2006).

I

The defendant first claims that the court improperly excluded evidence of a witness' prior inconsistent statements. Specifically, the defendant argues that the court abused its discretion by not allowing him to play an audiotape recording of statements made by Thomas Meier, a lieutenant in the Waterbury fire department, that contained inconsistencies when compared with his testimony. We disagree.

The following additional facts are necessary for our discussion. The state called Meier as its second witness. Meier testified that at the time of the accident, he was sleeping at the fire station. The sound of the accident awakened him, and he observed two heavily damaged motor vehicles through an open window. Meier dressed quickly and ran downstairs where he alerted the dispatchers about the accident. He then gathered some equipment and proceeded outside to the crash site.

Meier first went to the victims' sport utility vehicle and then to the vehicle operated by the defendant. He then went back to the sport utility vehicle and started examining the individuals inside. Meier then noticed that the vehicle driven by the defendant was on fire, so he went inside the fire station for additional help. Meier then ran back to the defendant's vehicle, where he observed that the passenger had been pulled out. The defendant extensively cross-examined Meier regarding his actions at the accident scene.

Following this testimony, audio recordings of Meier's conversations with the dispatcher were discovered and turned over to the defendant. There was a recording

of Meier's initial statements to the dispatcher while he was at the accident scene and his conversation with the dispatcher that occurred approximately one hour later. The court allowed the defendant to recall Meier for further cross-examination. Meier testified that he might have been "a little excited" when he initially called the dispatcher. Meier was asked several questions regarding his actions at the accident site and what he had told the dispatcher over the radio. He responded that he could not recall and that listening to a tape of the audio recordings could refresh his memory. The court then excused the jury and played the tape for Meier.

After the jury returned, defense counsel continued his cross-examination of Meier. Meier admitted that his voice did not sound excited on the recording. He also acknowledged that he never specified the number of vehicles involved in the accident to the dispatcher or that he was leaving the firehouse. Meier conceded that he failed to tell the dispatcher that he was responding to the accident scene or that there were any injuries. He agreed that the members of the fire station were not dispatched until six minutes after his initial call and that he was "shocked and dumbfounded" as to the delay.

The defendant then moved to have the audiotape played before the jury. The court heard argument by counsel on this issue outside the presence of the jury and concluded that the audio recordings were not admissible evidence. The court concluded that the recording of Meier's statements made at the accident scene would not be played for the jury because Meier admitted to the jury that he made those statements on the recording.[3] With respect to Meier's later conversa-

---

[3] The court specifically stated: "As far as his initial radio reports, which recorded the time and his impressions, [Meier] acknowledged that every single question that you asked him, 'yes, that's what I said,' and, 'that's what time it was.' So, there is no reason to play the tape for that reason."

tion with the dispatcher, the court determined that some portions of the recordings contained hearsay and that others failed to qualify as impeachment evidence.

As a preliminary matter, we set forth the applicable legal principles. "Impeachment of a witness by the use of a prior inconsistent statement is proper only if the two statements are in fact inconsistent. . . . Moreover, the inconsistency must be substantial and relate to a material matter. . . . Since the purpose of such evidence is to induce the tribunal to discard the one statement because the witness has also made another statement which cannot at the same time be true . . . the inconsistency must be *substantial* and relate to a *material matter.* . . . In determining whether an inconsistency actually exists, the testimony of the witness as a whole, or the whole impression or effect of what has been said, must be examined. . . . Moreover, statements from which a possible inference of inconsistency may be drawn are insufficient for the purpose of impeachment. . . . The trial court is vested with wide discretion as to what may be admitted as a prior inconsistent statement for impeachment purposes." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Richardson,* 214 Conn. 752, 763–64, 574 A.2d 182 (1990); *State* v. *Abernathy,* 72 Conn. App. 831, 841, 806 A.2d 1139, cert. denied, 262 Conn. 924, 814 A.2d 379 (2002); see also Conn. Code Evid. § 6-10.

With respect to the initial conversations between Meier and the dispatcher, the court did not determine that there were no inconsistencies between his testimony and his prior statements. The court instead concluded that there was no reason to play the audiotape because Meier acknowledged his prior statements. Subsection (c) of § 6-10 of the Connecticut Code of Evidence provides in relevant part that "[i]f a prior inconsistent statement made by a witness is shown to

or if the contents of the statement are disclosed to the witness at the time the witness testifies, and *if the witness admits to making the statement, extrinsic evidence of the statement is inadmissible, except in the discretion of the court. . . .*" (Emphasis added.) Additionally, the appellate courts in this state have established that when a witness admits to making a prior inconsistent statement, additional evidence of the inconsistency is merely cumulative. *State* v. *McDowell*, 179 Conn. 121, 127, 425 A.2d 935 (1979); *State* v. *Correia*, 33 Conn. App. 457, 463, 636 A.2d 860, cert. denied, 229 Conn. 911, 642 A.2d 1208, cert. denied, 513 U.S. 898, 115 S. Ct. 253, 130 L. Ed. 2d 174 (1994); *State* v. *Graham*, 21 Conn. App. 688, 704, 575 A.2d 1057, cert. denied, 216 Conn. 805, 577 A.2d 1063 (1990); *State* v. *Daskam*, 10 Conn. App. 50, 53, 521 A.2d 587, cert. denied, 203 Conn. 806, 525 A.2d 520 (1987); see *State* v. *Chapman*, 16 Conn. App. 38, 47, 546 A.2d 929, cert. denied, 209 Conn. 827, 552 A.2d 433 (1988).

With regard to the recording of the later conversation between Meier and the dispatcher, the court concluded that some portions of the statement were inadmissible hearsay and that others were consistent with his testimony. The defendant failed to perfect the appellate record by seeking an articulation of which statements were inadmissible hearsay and which were not inconsistent testimony. The record, therefore, is not adequate for our review. "This court's role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . When our rules of practice are not followed, and the record is not rectified, we are left to guess or speculate as to the existence of a factual predicate." (Citation omitted; internal quotation marks omitted.) *State* v. *Sargent*, 87 Conn. App. 24, 30, 864 A.2d 20, cert. denied, 273 Conn. 912, 870 A.2d 1082 (2005). As it is not the function of

this court to find facts when the record is devoid of such findings, we decline to review the defendant's claim.

We further note that the defendant's brief fails to discuss sufficiently his claim on appeal. As we previously noted, we do not address the merits of claims that have been briefed inadequately. See footnote 2. We decline, therefore, to address the defendant's claim with respect to the admissibility of the recording of the later conversation between Meier and the dispatcher.

We emphasize that the decision to admit extrinsic evidence for impeachment purposes is vested in the liberal discretion of the trial court. *State* v. *Butler,* 207 Conn. 619, 626, 543 A.2d 270 (1988). We conclude that in the present case, the court did not abuse this discretion by declining to play the audio recordings to the jury.

II

The defendant next argues that the court improperly admitted his hospital record into evidence. Specifically, the defendant claims that the record was not admissible pursuant to the business record exception[4] to the hear-

---

[4] General Statutes § 52-180 provides in relevant part: "(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter.

"(b) The writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such persons are unavailable as witnesses. Either of such facts and all other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of the evidence, but not to affect its admissibility." See also Conn. Code Evid. § 8-4.

say rule.[5] We conclude that the court did not abuse its discretion in admitting the hospital record of the defendant into evidence.

The following additional facts are necessary for our discussion. The state called Peter Jacoby, a physician and the head of the emergency department at St. Mary's Hospital in Waterbury, as a witness. Jacoby, who was not the defendant's treating physician, testified that the physicians and nurses who work in the emergency department are required to maintain records on patients. He testified that information gathered by the emergency room department staff is immediately documented in a patient's record. The prosecutor showed Jacoby portions of the defendant's medical record. Jacoby indicated that the documents in question were kept in the ordinary course of business of the hospital and generated at or about the time that the information

---

[5] The defendant also argues that his hospital record was not admissible into evidence due to the failure to comply with General Statutes § 4-104, which provides in relevant part: "Any and all parts of any such [hospital] record or copy, if not otherwise inadmissible, shall be admitted into evidence without any preliminary testimony, if there is attached thereto the certification in affidavit form of the person in charge of the record room or the hospital . . . indicating that such record or copy is the original record or a copy thereof, made in the regular course of the business of the hospital, and that it was the regular course of such business to make such record at the time of the transactions . . . . " This statute allows "hospital records containing expert opinions concerning diagnosis to be admitted without the in-court testimony of the treating medical practitioner." *Struckman* v. *Burns*, 205 Conn. 542, 550, 534 A.2d 888 (1987).

Nevertheless, § 4-104 is not the sole avenue by which medical records may be admitted into evidence. Medical records may be admitted under the business record exception. See, e.g., *Calcano* v. *Calcano*, 257 Conn. 230, 240–42, 777 A.2d 633 (2001); *Puchalsky* v. *Rappahahn*, 63 Conn. App. 72, 77, 774 A.2d 1029 ("[General Statutes §§] 4-104 and 52-180 allow otherwise inadmissible hearsay to be admissible, with certain limitations"), cert. denied, 256 Conn. 931, 776 A.2d 1147 (2001). In the present case, the state provided an in-court witness, Peter Jacoby, to testify and to qualify the defendant's medical record as a business record exception to the rule against hearsay. It was therefore unnecessary for the state to comply with the subpoena requirements of § 4-104.

contained in the record was obtained. The court, over the defendant's objections, admitted these sections of the defendant's medical record into evidence.

We begin our discussion by setting forth the applicable legal principles. "An out-of-court statement offered to prove the truth of the matter asserted is hearsay and is generally inadmissible unless an exception to the general rule applies." (Internal quotation marks omitted.) *State* v. *Fasano*, 88 Conn. App. 17, 39, 868 A.2d 79, cert. denied, 274 Conn. 904, 876 A.2d 15 (2005), cert. denied, 546 U.S. 1101, 126 S. Ct. 1037, 163 L. Ed. 2d 873 (2006); see also Conn. Code Evid. § 8-2. "Section 52-180 sets forth an exception to the evidentiary rule otherwise barring admission of hearsay evidence for business records that satisfy express criteria. . . . Section 52-180 (a) provides that a record of an act, transaction, occurrence or event is admissible as evidence of that act, transaction, occurrence, or event, provided that the record was made in the regular course of business. . . . The rationale for the exception derives from the inherent trustworthiness of records on which businesses rely to conduct their daily affairs. . . .

"To be admissible under the business record exception to the hearsay rule, a trial court judge must find that the record satisfies each of the three conditions set forth in . . . § 52-180. The court must determine, before concluding that it is admissible, that the record was made in the regular course of business, that it was the regular course of such business to make such a record, and that it was made at the time of the act described in the report, or within a reasonable time thereafter. . . . In applying the business records exception, the statute [§ 52-180] should be liberally interpreted." (Citations omitted; internal quotation marks omitted.) *State* v. *Christian*, 267 Conn. 710, 757–58, 841 A.2d 1158 (2004). Finally, we are mindful that "[a]ppellate review of the admission of a document

under § 52-180 is limited to determining whether the trial court abused its discretion." (Internal quotation marks omitted.) *State* v. *Kilroy*, 61 Conn. App. 164, 169, 763 A.2d 59 (2000).

In the present case, we conclude that the portions of the defendant's medical record that were admitted into evidence satisfied the requirements of the business record exception. The defendant's argument that they should have been excluded because Jacoby was not the treating physician is wholly without merit. The plain language of § 52-180 (b) provides: "The writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such persons are unavailable as witnesses. Either of such facts and all other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of the evidence, but not to affect its admissibility." The statute expressly provides that the person making the record is not required to testify. Furthermore, our Supreme Court has rejected a similar claim. "[T]he fact that the . . . sole witness as to the creation of the records . . . personally did not create each entry in the . . . narrative and [did] not have personal knowledge of the particular events recorded in the entry does not impact the admissibility of the records under § 52-180." *State* v. *William C.*, supra, 267 Conn. 703; see also *Calcano* v. *Calcano*, 257 Conn. 230, 241, 777 A.2d 633 (2001) ("This court repeatedly has held that [i]t is not necessary . . . that the witness have been the entrant himself or in the employ of the business when the entry was made. . . . It is sufficient for a witness to testify that it was the regular business practice to create a document within a reasonable time

after the occurrence of the event. This is sufficient to ensure that the document was created at the time when the event was fresh in the author's mind." [Citation omitted; internal quotation marks omitted.]). We conclude, therefore, that the court did not abuse its discretion in admitting portions of the defendant's hospital record into evidence.

The judgment is affirmed.

In this opinion the other judges concurred.