******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

BARCLAYS BANK DELAWARE *v.*
DIANA L. BAMFORD
(AC 44056)

Moll, Clark and DiPentima, Js.

*Syllabus*

The plaintiff bank sought to recover damages for the defendant's breach of
a credit card agreement, claiming that the defendant had defaulted on
a credit card account. The trial court granted the plaintiff's motion for
default for failure to disclose a defense, pursuant to the relevant rule
of practice (§ 13-19), and rendered judgment thereon following a hearing
in damages. During the proceedings, the defendant filed a motion to
disqualify the trial judge, F, from further participation in the proceedings
on the ground of impropriety, which the trial court denied. On appeal
to this court, the defendant claimed, inter alia, that the trial court improp-
erly denied the motion to disqualify. *Held*:

1. The trial court did not abuse its discretion in denying the defendant's
   motion to disqualify F, the defendant having failed to establish that a
   reasonable person presented with the facts would doubt F's impartiality;
   the record demonstrated that the defendant's counsel failed to provide
   any evidence of bias or impropriety sufficient to meet the required
   threshold, as counsel's history of past litigation involving F's former
   law firm and a single conversation with F, both occurring nearly twenty
   years ago, simply did not put F's impartiality in question.

2. The trial court properly granted the plaintiff's motion for default for failure
   to disclose a defense; contrary to the defendant's claim that she had no
   obligation to disclose a defense because the action did not fit into
   any of the categories specified under Practice Book § 13-19, this court
   determined that, for the purposes of § 13-19, the complaint, which
   sounded in default on a credit account, constituted an action "upon [a]
   written contract" within the meaning of § 13-19, as each credit card
   transaction was a unilateral promise to repay the debt being incurred,
   in accordance with the terms set forth in the credit card agreement, in
   exchange for the issuing bank's performance.

3. The trial court did not abuse its discretion in admitting the plaintiff's
   business records of the defendant's monthly account billing statements
   into evidence; although the defendant claimed that such admission was
   improper under the business records exception to the hearsay rule
   pursuant to statute (§ 52-180) and the applicable provision (§ 8-4) of the
   Connecticut Code of Evidence because the producing witness was not
   a bookkeeper who kept or maintained the records of the defendant's
   account, the witness' testimony provided an adequate foundation for
   admission, as he testified as to his current role as a recovery support
   lead for the plaintiff, which involved the management of collection
   agencies and maintaining records for collection efforts to ensure they
   are accurate and complete, and that he had reviewed the defendant's
   account history and monthly billing statements and that they were accu-
   rate in all respects and had been mailed to the defendant.

Argued December 7, 2021—officially released June 7, 2022

*Procedural History*

Action to recover damages for, inter alia, breach of
a credit card agreement, and for other relief, brought to
the Superior Court in the judicial district of Middlesex,
where the court, *Frechette, J.*, granted the plaintiff's
motion for default for failure to disclose a defense;
thereafter, the court, *Suarez, J.*, denied the defendant's
motion to disqualify judicial authority; subsequently,
following a hearing in damages, the court, *Suarez, J.*,
rendered judgment for the plaintiff, from which the
defendant appealed to this court. *Affirmed.*

*Pat Labbadia III*, for the appellant (defendant).

*Jeanine M. Dumont*, for the appellee (plaintiff).

*Opinion*

DiPENTIMA, J. In this debt collection action, the defendant, Diana L. Bamford, appeals from the judgment of the trial court, *Suarez, J.*, following a hearing in damages, awarding the plaintiff, Barclays Bank Delaware, monetary relief in the amount of $5661.81 plus costs of $436.20. On appeal, the defendant claims that the court: (1) abused its discretion in denying her motion to disqualify the Honorable Matthew E. Frechette, a judge of the Superior Court, and in ruling on her motions to reargue and reconsider that denial; (2) improperly granted the plaintiff's motion for default for failure to disclose a defense; and (3) improperly admitted certain documents containing hearsay statements into evidence at the hearing in damages. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of this appeal. On May 7, 2018, the plaintiff filed a two count complaint against the defendant, sounding in breach of contract and account stated. The complaint generally alleges that the defendant was indebted to the plaintiff in the sum of $5661.81 arising out of the use of a credit account issued by the plaintiff.

On June 25, 2018, the defendant filed a request to revise the complaint to allege whether "the alleged debt arose orally or as a result of a written document." On September 11, 2018, the plaintiff filed a motion for extension of time to object thereto, alleging that the defendant never had served her request to revise on the plaintiff. On the same date, the plaintiff also filed an objection to the defendant's request to revise. On September 20, 2018, the defendant moved for a judgment of nonsuit on the ground that the plaintiff failed to comply with the defendant's request to revise; the plaintiff filed an objection to the motion for judgment of nonsuit. On September 24, 2018, the court, *Frechette, J.*, sustained the plaintiff's objection to the defendant's request to revise.

On October 9, 2018, the defendant filed a motion for order seeking to disallow nunc pro tunc the plaintiff's filings relating to the defendant's request to revise and the motion for judgment of nonsuit, contending that the plaintiff never served those filings on her electronically. On that same date, the defendant's counsel filed a motion to reargue and/or reconsider the court's September 24, 2018 order, outlining for the first time that he had had prior dealings with Judge Frechette and his father. The defendant also requested oral argument on the plaintiff's objection to her motion for a judgment of nonsuit. In the request for argument, the defendant's counsel suggested that, "[d]ue to past dealings, the propriety of Judge Frechette's involvement in the undersigned's cases needs to be addressed."

On October 15 and 22, 2018, Judge Frechette denied the defendant's motion to reargue and the defendant's motion for order, respectively. In denying the motion to reargue, Judge Frechette referred to an earlier unrelated case in which the defendant's counsel filed a motion to "disqualify [Judge Frechette] based on the identical grounds referenced in [multiple paragraphs] of this motion." See *Value Health Care Services, LLC* v. *PARCC Health Care, Inc.*, Superior Court, judicial district of New Haven, Docket No. CV-11-5033728-S (July 9, 2012). Judge Frechette noted "that the Presiding Judge Jonathan Silbert denied said motion, finding it to be 'utterly without merit,'" and that the motion to reargue had also been denied. Judge Frechette attached a copy of both decisions to his ruling and concluded that "[t]he issue concerning the disqualification of the undersigned has already been raised and litigated by defense counsel and found to be without merit." In denying the motion for order, Judge Frechette incorporated his order denying the motion to reargue. On November 5, 2018, the defendant moved for an extension of time to file a motion to reargue the court's order denying her prior motion to reargue regarding her request to revise. The plaintiff objected to the November 5, 2018 motion, and it was ultimately denied by the court, *Suarez, J.*, on February 28, 2019.

Meanwhile, on September 12, 2018, the plaintiff had filed a demand for disclosure of defense, pursuant to Practice Book § 13-19.[1] On October 18, 2018, the plaintiff filed a motion for default for failure to disclose a defense. On October 30, 2018, the defendant objected to the plaintiff's motion for default and moved for an extension of time to plead in response to the plaintiff's demand for disclosure of defense. On November 13, 2018, the defendant filed an objection to the plaintiff's motion for default, contending that the plaintiff's demand for disclosure of defense was improperly filed in the present case on the ground that it is not a case to which § 13-19 applies because it is not an action "upon [a] written contract." On November 14, 2018, the plaintiff replied to the defendant's objection and argued that § 13-19 applied because "[t]his was a revolving credit card account. Each time the defendant used the account, she signed for the charges or otherwise acknowledged the charges to the account. Therefore, each time she charged to this account, there was a writing which memorialized her agreement to pay for the charges she made to the account. To claim that this is not an action upon a written contract is unfounded and frivolous." On November 15, 2018, Judge Frechette granted the plaintiff's motion for default.

On November 19, 2018, the defendant filed a "notice that no action can be taken," indicating that she intended to file a motion to recuse Judge Frechette "from further proceedings in this matter, or in any other

matters in which the [defendant's counsel] is involved in any capacity in order to avoid the appearance of impropriety." In response to the defendant's filing, the court, *Suarez, J.*, held a hearing on December 12, 2018, at which the defendant's counsel reiterated that he intended to file a motion to disqualify Judge Frechette. Judge Suarez stated that, with respect to the requirements to timely file a motion in accordance with Practice Book § 1-23, "if [the defendant's counsel takes] the position that Judge Frechette should be disqualified because he may have some kind of bias . . . we have to address that issue immediately. Certainly [the defendant's counsel is] past ten days with . . . respect to this case." Judge Suarez, then sitting as presiding judge for civil matters and administrative judge for the judicial district of Middlesex, and citing "an obligation to . . . address any potential claim of bias against any judge that sits [in the judicial district of Middlesex]," ordered that, "if [the defendant] wish[ed] to have Judge Frechette recuse himself, [the court would] give [her] one week . . . to file that motion."

On December 19, 2018, the defendant filed a verified motion to disqualify Judge Frechette on the ground of apparent impropriety. The claim of impropriety centered on a conversation between the defendant's counsel and Judge Frechette at an unspecified time between 1997 and 2007, while Judge Frechette (before he was appointed to the bench) was an attorney working with his father. Further, the defendant's counsel claimed that a lawsuit filed against him by Judge Frechette's father should bar Judge Frechette from being involved in any future proceedings with him.[2] The defendant's counsel also challenged the propriety of Judge Frechette's orders disposing of the defendant's request to revise in the present case.

Judge Suarez held a hearing on the defendant's motion to disqualify on January 2, 2019, and issued a memorandum of decision denying the motion on February 22, 2019. The memorandum of decision set forth three principal grounds for the denial. First, Judge Suarez reasoned that the motion to disqualify Judge Frechette was barred by collateral estoppel because Judge Silbert previously denied "the same motion, encompassing the same issues," filed by the defendant's counsel in *Value Health Care Services, LLC* v. *PARCC Health Care, Inc.*, supra, Superior Court, Docket No. CV-11-5033728-S. Second, Judge Suarez determined that the defendant's counsel "constructively waived" his right to file his motion to disqualify because "he failed to file his motion to disqualify within ten days of the case being called for trial or hearing," pursuant to Practice Book § 1-23, and, instead, waited "almost three months after Judge Frechette issued his first ruling." Third, Judge Suarez concluded that the motion failed "on the merits" because the defendant's counsel failed to provide any evidence from which one could reasonably

question Judge Frechette's impartiality. The defendant then filed two subsequent motions to reargue and/or reconsider; the court denied the first motion and granted the second motion, but denied the relief requested therein.[3]

On February 19, 2020, the plaintiff filed a motion for judgment requesting that the court enter judgment in its favor in the amount of $5661.81 in damages, plus $436.20 in costs, on the basis of the court's prior default of the defendant for her failure to disclose a defense.[4] On that same day, the court, *Suarez, J.*, held a hearing in damages at which the plaintiff called one of its employees, Michael Noonan, to testify as to the account statements involved in this matter. During the hearing, after the plaintiff's counsel inquired of Noonan, the account statements were offered as a full exhibit. The defendant objected thereto, on the basis of a lack of proper foundation to qualify as a business record pursuant to General Statutes § 52-180 and § 8-4 of the Connecticut Code of Evidence. This objection was overruled by the court. On March 2, 2020, the court granted the plaintiff's motion for judgment and rendered judgment for the plaintiff in the amounts it had requested. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court abused its discretion in denying her motion to disqualify Judge Frechette. We find no abuse of discretion.[5]

We begin with the applicable standard of review. "Our review of the trial court's denial of a motion for disqualification is governed by an abuse of discretion standard." *State* v. *Milner*, 325 Conn. 1, 12, 155 A.3d 730 (2017). Practice Book § 1-23 provides: "A motion to disqualify a judicial authority shall be in writing and shall be accompanied by an affidavit setting forth the facts relied upon to show the grounds for disqualification and a certificate of the counsel of record that the motion is made in good faith. The motion shall be filed no less than ten days before the time the case is called for trial or hearing, unless good cause is shown for failure to file within such time."

"Of all the charges that might be leveled against one sworn to administer justice and to faithfully and impartially discharge and perform all the duties incumbent upon [them] . . . a charge of bias must be deemed at or near the very top in seriousness, for bias kills the very soul of judging—fairness." (Internal quotation marks omitted.) *Wendt* v. *Wendt*, 59 Conn. App. 656, 693, 757 A.2d 1225, cert. denied, 255 Conn. 918, 763 A.2d 1044 (2000). Pursuant to rule 2.11 (a) of the Code of Judicial Conduct, "[a] judge shall disqualify himself . . . in any proceeding in which the judge's impartiality might reasonably be questioned . . . . In applying this rule, [t]he

reasonableness standard is an objective one. Thus, the question is not only whether the particular judge is, in fact, impartial but whether a reasonable person would question the judge's impartiality on the basis of all the circumstances. . . . Moreover, it is well established that [e]ven in the absence of actual bias, a judge must disqualify himself in any proceeding in which his impartiality might reasonably be questioned, because the appearance and the existence of impartiality are both essential elements of a fair exercise of judicial authority. . . . Nevertheless, because the law presumes that duly elected or appointed judges, consistent with their oaths of office, will perform their duties impartially . . . the burden rests with the party urging disqualification to show that it is warranted." (Internal quotation marks omitted.) *State* v. *Milner*, supra, 325 Conn. 12.

The defendant argues that Judge Frechette "is the son of the longtime enemy" of the defendant's counsel. Specifically, the defendant contends that Judge Frechette and his father belonged to a law firm that sued the defendant's counsel in his individual capacity, and, according to the defendant's counsel, "there was substantial animosity and discord between the law firm of Frechette & Frechette and its members (including now [Judge] Frechette), and the [defendant's] counsel as an individual defendant in that matter, and also in its related matters. The [defendant's] counsel believes this animosity is still present." Because of this tumultuous history, the defendant argues that the situation clearly involves the appearance of impropriety.

In addressing the defendant's motion to disqualify, the court held that "[t]here is nothing in the record indicating that Judge Frechette has provided even a minute appearance of impropriety, nor would a reasonable person question his impartiality. This motion is completely lacking factual support and is instead riddled with unsubstantiated, opinionated accusations aimed at achieving some personally motivated goal." The court went on to state that "[t]here is nothing to show that Judge Frechette has demonstrated animosity toward [the defendant's counsel] but, rather, it is apparent that [the defendant's counsel] still holds resentment toward Judge Frechette. . . . The allegedly inflammatory conversation between Judge Frechette and [the defendant's counsel] occurred sometime in 1997, over twenty years ago. . . . An adverse or hostile conversation between attorneys, without more, does not provide an adequate basis for a motion to disqualify judicial authority and fails to fall within rule 2.11 of the Code of Judicial Conduct."

We iterate that "[v]ague and unverified assertions of opinion, speculation and conjecture cannot support a motion to recuse nor are they sufficient to warrant an evidentiary hearing on the same." *DeMatteo* v. *DeMatteo*, 21 Conn. App. 582, 591, 575 A.2d 243, cert. denied,

216 Conn. 802, 577 A.2d 715 (1990). Moreover, adverse rulings, even if later determined to be erroneous, do not demonstrate judicial bias or partiality. See *Bieluch* v. *Bieluch*, 199 Conn. 550, 553, 509 A.2d 8 (1986) ("[t]he fact that a trial court rules adversely to a litigant, even if some of these rulings were to be determined on appeal to have been erroneous, does not demonstrate personal bias"); *Emerick* v. *Glastonbury*, 177 Conn. App. 701, 739, 173 A.3d 28 (2017) ("[A]dverse rulings do not themselves constitute evidence of bias. . . . The fact that [a party] strongly disagrees with the substance of the court's rulings does not make those rulings evidence of bias." (Internal quotation marks omitted.)), cert. denied, 327 Conn. 994, 175 A.3d 1245 (2018); *Traystman* v. *Traystman*, 141 Conn. App. 789, 803, 62 A.3d 1149 (2013) ("an adverse or unfavorable ruling is not, in itself, evidence of judicial bias against a litigant").

Having reviewed the record, we conclude that the defendant has not met her burden to show that the court abused its discretion in determining that the defendant failed to establish that a reasonable person presented with the facts would doubt Judge Frechette's impartiality. See *State* v. *Milner*, supra, 325 Conn. 12. As the court aptly concluded, the defendant's counsel failed to provide any evidence of bias or impropriety sufficient to meet the required threshold. A history of past litigation involving Judge Frechette's former law firm and a single conversation, both occurring nearly twenty years ago, simply do not put Judge Frechette's impartiality in question. Thus, we conclude that the court did not abuse its discretion in denying the defendant's motion to disqualify Judge Frechette.

II

The defendant next claims that the court erred in granting the plaintiff's motion for default for failure to disclose a defense. Specifically, the defendant argues that the plaintiff did not base its allegations in the complaint "upon [a] written agreement," as required by Practice Book § 13-19. We disagree with the defendant.

The defendant's claim concerns the interpretation of a rule of practice, as well as our interpretation of the plaintiff's complaint; thus, our review is plenary. See *Compass Bank* v. *Dunn*, 196 Conn. App. 43, 46, 228 A.3d 663 (2020). "The interpretive construction of the rules of practice is to be governed by the same principles as those regulating statutory interpretation. . . . The interpretation and application of a statute, and thus a Practice Book provision, involves a question of law over which our review is plenary." (Internal quotation marks omitted.) *Meadowbrook Center, Inc.* v. *Buchman*, 328 Conn. 586, 594, 181 A.3d 550 (2018); see also *Caron* v. *Connecticut Pathology Group, P.C.*, 187 Conn. App. 555, 564, 202 A.3d 1024 (interpretation of pleadings is subject to plenary review and this court is not bound by labels attached to complaint), cert. denied, 331 Conn.

922, 206 A.3d 187 (2019).

"In seeking to determine [the] meaning [of a statute or a rule of practice, we] . . . first . . . consider the text of the statute [or rule] itself and its relationship to other statutes [or rules]. . . . If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence . . . shall not be considered. . . . We recognize that terms [used] are to be assigned their ordinary meaning, unless context dictates otherwise." (Citations omitted; internal quotation marks omitted.) *Meadowbrook Center, Inc.* v. *Buchman*, supra, 328 Conn. 594. "[W]e follow the clear meaning of unambiguous rules, because [a]lthough we are directed to interpret liberally the rules of practice, that liberal construction applies only to situations in which a strict adherence to them [will] work surprise or injustice." (Internal quotation marks omitted.) Id., 595.

We turn to the relevant rule of practice at issue in this case, Practice Book § 13-19, which provides in relevant part: "In any action to foreclose or to discharge any mortgage or lien or to quiet title, or in any action upon any written contract, in which there is an appearance by an attorney for any defendant, the plaintiff may at any time file and serve . . . a written demand that such attorney present to the court, to become part of the file in such case, a writing signed by the attorney stating whether or not he or she has reason to believe and does believe that there exists a bona fide defense to the plaintiff's action and whether such defense will be made, together with a general statement of the nature or substance of such defense. If the defendant fails to disclose a defense within ten days of the filing of such demand in any action to foreclose a mortgage or lien or to quiet title, or in any action upon any written contract, the plaintiff may file a written motion that a default be entered against the defendant by reason of the failure of the defendant to disclose a defense."

As recently restated in *Compass Bank* v. *Dunn*, supra, 196 Conn. App. 49, "[o]ne of the purposes of the rule is to enable the plaintiff, at an early stage of the proceedings, to ascertain whether a defense is claimed in good faith to exist, and is honestly intended to be made, or whether it is a mere sham defense to be interposed merely for delay." (Internal quotation marks omitted.) To this end, Practice Book § 13-19 clearly states: "If no disclosure of defense has been filed, the judicial authority may order judgment upon default to be entered for the plaintiff at the time the motion is heard or thereafter, provided that in either event a separate motion for such judgment has been filed."

In the present case, the defendant never disclosed a defense and instead argues that she was under no obligation to do so because the demand to disclose a

defense was improper in this case. Specifically, the defendant argues that Practice Book § 13-19 allows a demand to be filed in only three types of cases: (1) an "action to foreclose or to discharge any mortgage or lien"; (2) an action "to quiet title"; and (3) an "action upon any written contract." See Practice Book § 13-19. The defendant argues that the plaintiff's complaint fails to fit within any of the three categories of cases. The plaintiff's two count complaint alleges that the defendant became indebted to the plaintiff in the sum of $5661.81 for use of a credit account issued by the plaintiff. The complaint further alleges that the defendant had a credit account with the plaintiff, and in connection with that account, the plaintiff sent periodic account statements to the defendant setting forth all of the charges and credits applicable to the account, as well as the balance due.

Because the plain language of Practice Book § 13-19 is unequivocal with respect to the permissible type of actions in which a plaintiff may file a demand for disclosure of defense, the relevant inquiry in the instant appeal is whether the plaintiff stated a cause of action predicated upon a "written contract." In resolving this question, we construe count one of the complaint, titled "Default on Credit Account," to allege a credit card account relationship between the plaintiff and the defendant, noting that the first paragraph includes a sixteen digit credit account number.[6] Thus, in applying § 13-19 to the present case, we note that a majority of courts have adopted a theory of contract that "draws upon common law principles of contract law and interprets each credit card transaction as a unilateral contract[7] in which the cardholder unilaterally promises to repay the debt being incurred, in accordance with the terms set forth in the credit card agreement, in exchange for the issuing bank's performance (i.e. reimbursing the merchant for the goods)." (Footnote added.) *Bank of America* v. *Jarczyk*, 268 B.R. 17, 21–22 (Bankr. W.D.N.Y. 2001); see also 1 T. Murray, Corbin on Contracts (Rev. Ed. 1998) § 2.33, p. 376 (describing "typical credit card" transaction as "offer by the issuer to a series of unilateral contracts"). More particularly, when applying this theory, courts have determined that "each time a cardholder uses his credit card, he impliedly represents to the issuing bank that he intends to repay the debt incurred." *In re Thanh* v. *Truong*, 271 B.R. 738, 745 (Bankr. D. Conn. 2002); see also *American Express Bank, FSB* v. *Bennett*, Superior Court, judicial district of Middlesex, Docket No. CV-14-6012244-S (September 11, 2015) (61 Conn. L. Rptr. 15, 17) ("[i]n addition to signatures on applications and/or credit card charge slips, each use of a credit card constitutes a representation by the cardholder of his or her intention to pay for the charges to the account").

In the present case, we apply this theory to determine that, for the purposes of Practice Book § 13-19, the

complaint, which sounds in default on a credit account, constitutes an action "upon [a] written contract." See Practice Book § 13-19. The defendant neither has disclosed any defense nor cited any authority in her appellate brief that stands for the proposition that this was not an action subject to § 13-19. Accordingly, we conclude that the court properly granted the plaintiff's motion for default for failure to disclose a defense.

### III

The defendant finally claims that the trial court improperly admitted certain documents into evidence at the hearing on damages. Specifically, the defendant argues that the court improperly allowed her monthly account billing statements from February, 2016, through September, 2017, into evidence, over her objection. The defendant argues that the statements were admitted without a proper foundation as required by the business records exception to the hearsay rule under § 52-180 and § 8-4 of the Connecticut Code of Evidence.

The following additional procedural history is relevant to our analysis. Following the entry of default against the defendant and the filing of the plaintiff's motion for judgment, on February 19, 2020, the court, *Suarez*, *J.*, held a hearing in damages. The plaintiff's counsel called Noonan and inquired as to his seventeen years of employment with the plaintiff, including: his current title as a recovery support lead, which involves the management of collection agencies; all of his prior roles with the plaintiff; and his review of the account statements prior to testifying. The plaintiff's counsel then asked Noonan to identify plaintiff's exhibit one, which included the account billing statements relative to the defendant's account. The defendant's counsel objected and stated: "I don't believe the witness has— they've laid a foundation for the witness to testify to that. He's indicated that after they were prepared, he reviewed them. So, how would he know what was sent out or not sent out? So, I object to the question; there's no proper foundation for it." The court overruled the objection.

The plaintiff's counsel later offered the account billing statements as a full exhibit, to which the defendant's counsel again objected and stated: "Your Honor, there's not a proper foundation for the admission of these . . . documents. . . . [T]hey have to prove certain things under the business records exception to the hearsay rule . . . . There's not a proper foundation for—for the—the admission of these documents . . . ." The plaintiff's counsel responded by stating that: "Mr. Noonan has worked for this bank for seventeen years handling account records. . . . [H]e testified that these are the account records relating to [the defendant's] account . . . and that they were sent to her on this account. And I am not sure what further foundation I

can give [the defendant's counsel] that would satisfy it." The court then overruled the objection.

Ultimately, the court stated that, on the basis of the testimony from Noonan, it was satisfied that the defendant owed the plaintiff $5661.81.

On appeal, the defendant claims that the court erred when it allowed the account statements into evidence over the defendant's objections that the statements failed to meet the requirements of § 52-180 and § 8-4 of the Connecticut Code of Evidence. Specifically, the defendant argues that, although Noonan may maintain possession of the books and records after they have been charged off, he is not a bookkeeper who kept or maintained the records of the defendant's account. The defendant also argues that the plaintiff failed to elicit testimony that the account statements were kept in the ordinary course of business.

We begin by setting forth our standard of review. "To the extent [that] a trial court's admission of evidence is based on an interpretation of the Code of Evidence, our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review. . . . We review the trial court's decision to admit [or exclude] evidence, if premised on a correct view of the law . . . for an abuse of discretion." (Internal quotation marks omitted.) *LM Ins. Corp.* v. *Connecticut Dismanteling, LLC*, 172 Conn. App. 622, 627–28, 161 A.3d 562 (2017).

Next, we identify the relevant legal principles regarding the defendant's evidentiary claim. "Hearsay is an out-of-court statement offered to establish the truth of the matter asserted. Conn. Code Evid. § 8-1 (3). Hearsay evidence is inadmissible, subject to certain exceptions. Conn. Code Evid. § 8-2. . . . One such exception is the business records exception. See General Statutes § 52-180; Conn. Code Evid. § 8-4. In order to establish that a document falls within the business records exception to the rule against hearsay, codified at § 52-180, three requirements must be met. . . . The proponent need not produce as a witness the person who made the record or show that such person is unavailable but must establish that [1] the record was made in the regular course of any business, and [2] that it was the regular course of such business to make such writing or record [3] at the time of such act, transaction, occurrence or event or within a reasonable time thereafter." (Citations omitted; footnote omitted; internal quotation marks omitted.) Id., 628–29.

"The rationale for the exception derives from the inherent trustworthiness of records on which businesses rely to conduct their daily affairs." (Internal quotation marks omitted.) *Connecticut Light & Power Co.*

v. *Gilmore*, 289 Conn. 88, 116, 956 A.2d 1145 (2008). Furthermore, "[i]n applying the business records exception . . . [§ 52-180] should be liberally interpreted." (Internal quotation marks omitted.) Id.

In *Connecticut Light & Power Co.*, our Supreme Court concluded "that the trial court properly determined that [the witness] was competent to testify that the computer printout and the letter, which included information transferred electronically from the technician in the field to the plaintiff's in-house database, had been made in the ordinary course of the plaintiff's business, that similar documents were generated in the course of the plaintiff's business and that the documents had been created within a reasonable time following the inspection of the defendant's residence. [The witness'] testimony provided an adequate foundation for admission of the documents because, as an eighteen year employee of the plaintiff and a supervisor of credit and collection, he had demonstrated extensive personal knowledge of the plaintiff's billing procedures, the procedures established to collect on past due accounts and the electronic and computerized systems used to maintain and update information regarding such matters." Id., 117. Additionally, although the witness was not present when the technician performed any work, the witness had gone to the defendant's home previously to gather information and investigate the meters and "thus was acquainted with the actual meters that had produced the information recorded by the technician." Id., 118. Accordingly, the court concluded that "the trial court did not abuse its discretion in admitting the letter and the computer printout into evidence under the business records exception to the hearsay rule." Id.

Similarly, in *State* v. *Bermudez*, 95 Conn. App. 577, 589, 897 A.2d 661 (2006), this court concluded that a defendant's argument that portions of medical records that were admitted into evidence "should have been excluded because [the witness] was not the treating physician is wholly without merit." In so concluding, the court iterated that "[t]he statute expressly provides that the person making the record is not required to testify. . . . [T]he fact that the . . . sole witness as to the creation of the records . . . personally did not create each entry in the . . . narrative and [did] not have personal knowledge of the particular events recorded in the entry does not impact the admissibility of the records under § 52-180." (Internal quotation marks omitted.) Id.

In the present case, Noonan testified as to his current role as recovery support lead for the plaintiff, as well as his previous experience with the company. Similar to the witness in *Connecticut Light & Power Co.* v. *Gilmore*, supra, 289 Conn. 117–18, he also testified that his current position involved the management of collection agencies, managing the back office processing of

fraud and dispute claims, and maintaining the records for collection efforts to ensure that they are accurate and complete. Additionally, similar to *State* v. *Bermudez*, supra, 95 Conn. App. 589, although Noonan was not the individual who created the record, he testified that in preparation for his testimony, he reviewed the defendant's account history and monthly billing statements, and then testified that those statements, which he reviewed, dated February 25, 2016, through September 24, 2017, were accurate in all respects and were mailed to the defendant.[8]

The defendant's argument that, although Noonan "may maintain possession of the books and records after they have been charged off," he is not a "bookkeeper" is the same as that rejected by the courts in both *Connecticut Light & Power Co.* v. *Gilmore*, supra, 289 Conn. 117–18, and *State* v. *Bermudez*, supra, 95 Conn. App. 589. Upon a review of the record and the applicable law, we determine that the defendant has failed to meet her burden to show that the court abused its discretion in admitting the plaintiff's business records into evidence.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Practice Book § 13-19 provides in relevant part: "In any action to foreclose or to discharge any mortgage or lien or to quiet title, or in any action upon any written contract, in which there is an appearance by an attorney for any defendant, the plaintiff may at any time file and serve in accordance with Sections 10-12 through 10-17 a written demand that such attorney present to the court, to become a part of the file in such case, a writing signed by the attorney stating whether he or she has reason to believe and does believe that there exists a bona fide defense to the plaintiff's action and whether such defense will be made, together with a general statement of the nature or substance of such defense. If the defendant fails to disclose a defense within ten days of the filing of such demand in any action to foreclose a mortgage or lien or to quiet title, or in any action upon any written contract, the plaintiff may file a written motion that a default be entered against the defendant by reason of the failure of the defendant to disclose a defense. If no disclosure of defense has been filed, the judicial authority may order judgment upon default to be entered for the plaintiff at the time the motion is heard or thereafter, provided that in either event a separate motion for such judgment has been filed . . . ."

[2] Although then attorney Frechette worked in the same law firm with his father, he was not the attorney handling the matter involving the defendant's counsel.

[3] The defendant initially appealed from the court's decision to deny the verified motion to disqualify and the first motion to reargue and/or reconsider. The appeal was dismissed for lack of a final judgment.

[4] On March 20, 2019, prior to the defendant's filing of the previously mentioned appeal, the plaintiff filed a motion for judgment. See footnote 2 of this opinion. The court did not rule on the motion and instead stated that "[t]he matter may be claimed for a hearing in damages upon the expiration of the Appellate Court stay . . . ."

[5] The defendant also argues that the court erred in concluding that the prior disqualification decision by Judge Silbert was subject to collateral estoppel sufficient to deny his motion to disqualify and/or in concluding that the motion to disqualify was untimely filed. We need not address these claims because we conclude that the court did not abuse its discretion in determining that the defendant's motion to disqualify failed on the merits. See generally *Seder* v. *Errato*, 211 Conn. App. 167, 183, 272 A.3d 252 (2022) (we need not reach appellant's additional claims when court's decision is supported by other proper grounds).

In addition, our conclusion that the court did not abuse its discretion in

denying the defendant's motion to disqualify Judge Frechette is dispositive of the claims raised in the defendant's motions to reargue and/or reconsider, and, accordingly, we need not address the defendant's argument as to the court's denials of those motions. See, e.g., *Kling* v. *Hartford Casualty Ins. Co.*, 211 Conn. App. 708, 723 n.7,     A.3d     (2022) ("The plaintiff also claims on appeal that the court erred when it denied his motion to reargue/reconsider. Because our conclusion that the defendant did not have a duty to defend is dispositive of the claims raised in the motion to reargue/reconsider, we need not address this argument.").

[6] The first paragraph of count one of the complaint alleges that "[o]n or before September 28, 2017, the defendant became indebted to the plaintiff in the sum of $5,661.81 for use of credit account number XXXXXXXXXXXXX9832 issued by the plaintiff."

[7] "[T]he mere issuance of a credit card does not create a binding contract between the card issuer and the cardholder. Instead, the issuance of a credit card is simply an offer to a series of unilateral contracts. Until that offer is accepted by the cardholder, by using his credit card, no contract has been formed." (Emphasis omitted.) *Bank of America* v. *Jarczyk*, 268 B.R. 17, 22 (Bankr. W.D.N.Y. 2001).

[8] Additionally, the following colloquy took place between the plaintiff's counsel and Noonan:

"Q. Okay. Now, could you tell us, sir, does [the plaintiff] have records relating to each one of the charges that appear on this account?

"A. Yes.

"Q. Okay. What kind of records does the bank have?

"A. We have electronic records, which are encapsulated in this—in the billing statements, so that it mirrors.

"Q. Okay. Do you have signed or authorized receipts for each one of these charges by [the defendant]?

"A. No.

"Q. And can you explain to the court why that is?

"A. We do—we do not—those would be in [the defendant's] possession.

"Q. Okay.

"A. We do not have access to any of the signed receipts that she—when she made these purchases.

"Q. Are signed receipts ever provided to [the plaintiff] on an account with activity like this?

"A. No, not unless—not unless there is a fraud investigation or—of that nature, yeah.

"Q. Or a dispute on the charges?

"A. Or a dispute, correct.

"Q. Okay. So, they would not be recorded or maintained by the bank in the ordinary course of its business?

"A. Correct, they would not."

———————————————